STATE (JOHN J. McKENNA) *vs.* COSIMO MERCURIO.
STATE (JOHN J. McKENNA) *vs.* SAME.
STATE (JOHN J. McKENNA) *vs.* FLORENCE T. MERCURIO.
STATE (JOHN J. McKENNA) *vs.* SAME.

OCTOBER 25, 1963.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

POWERS, J.   These are four criminal complaints against the defendants who are husband and wife.   The first two charge that the husband "Did aid and assist in the recording of a bet on a horse race" and "Did knowing [sic] have in his possession a certain slip or certificate such as is used in carrying on, promoting and playing the game commonly known as policy-lottery or policy."   In the other two cases the wife is charged with the same offenses.

The four cases were consolidated for trial before a superior court justice sitting without a jury and resulted in the convictions of defendants as charged.   Each case is before us on defendant's bill of exceptions to the ruling sustaining the state's demurrer to defendant's plea in abatement, to the denial of the motion to suppress, to certain evidentiary rulings, and to the decision of the trial justice.

It appears from the record that about noon on May 8, 1961, defendants and a female companion were first observed by two police officers in an automobile parked across the street from Lorgnettes, Inc., an optical firm at 82 Aldrich street in the city of Providence.   They were detectives Joseph R. Gonsalves and James H. Dodd of the Providence police "C" squad, who testified they had information that the car in question was used by a person or persons in connection with gambling operations.

The defendant husband testified that he was the operator of the car at the time; that accompanied by his wife, who was employed at Lorgnettes, he drove to that establishment and picked up a fellow employee of Mrs. Mercurio; that he proceeded up Aldrich street to Broad, turned right, and continued to the intersection of Sackett street where the woman passenger alighted; that he then headed for home, driving down Broad street and up Potters avenue where he stopped for a red light at the intersection of Bucklin street; and that while thus stopped detective Gonsalves opened the passenger side door of the car, entered the rear seat, and directed him to drive to police headquarters.

The testimony of the defendant husband and of the detectives as to whether the former was "ordered" or "requested" to follow instructions is in sharp conflict. In any event the defendant husband did drive to the station where he and his wife were separated, both were questioned and, making certain incriminatory statements, disclosed that they had in their possession several envelopes containing cash, "number slips," and recorded horse bets.

The defendants were subsequently released and on the following day complainant procured warrants from the district court of the sixth judicial district on the basis of the evidence obtained from defendants on the previous day.

Appealing from convictions in the district court, defendants filed pleas in abatement, to which the state's demurrers were sustained. They also filed motions to suppress, which were denied by a superior court justice.

At their trials, defendants objected to the introduction of the evidence and to the admission of statements made by them during their interrogation.

Although defendants preserved and have prosecuted all of their exceptions to this court, we deem it necessary to consider only their exceptions to the denial of their motions to suppress.

The defendant husband testified that prior to his release on May 8 he was fingerprinted and photographed. Whether the defendant wife was so processed at the station does not appear since she did not testify at any time.

Both detectives admitted under cross-examination that from the time they first observed defendants in the parked car on Aldrich street to the moment when detective Gonsalves ordered the operator of the car to drive to the station, neither defendant gave either officer any reason to believe that a misdemeanor had been or was being committed in their presence.

Moreover, detective Gonsalves freely acknowledged that after he had directed the husband to drive to the station, defendants were not at liberty to drive anywhere else. Detective Dodd testified that a police matron assisted in the questioning and investigation of the wife. This, he stated, was customary whenever a "female prisoner" was taken into custody.

On this state of the record we are constrained to conclude that defendants were arrested at the time they were apprehended at the corner of Potters avenue and Bucklin street. Further, we are of the opinion that the arrest was invalid, having been made without a warrant and without probable cause, no offense amounting to a misdemeanor having been committed in the presence of the arresting officers.

Nor, as defendants contend, can the arrest be justified on the authority of G. L. 1956, §12-7-3, which provides in part:

"A peace officer may without a warrant arrest a person for a misdemeanor, whenever:
"* * *

"(b) The person to be arrested in fact has committed or is committing a misdemeanor in the presence of the officer, and in such case it shall be immaterial that the officer did not believe him guilty or on unreasonable ground entertained belief in his guilt."

In *Henry* v. *United States,* 361 U. S. 98, it was held that the constitutional standard against an illegal arrest is found-

ed on the common law. Here the legislature has attempted to abrogate the common-law test and substitute therefor that which, at common law, constituted an unwarranted interference with one's liberty.

It is now settled that the due process clause of article XIV of amendments to the United States constitution is binding on the state and that the immunity of art. IV of amendments is applicable to arrest as well as to unreasonable searches and seizures. *Giordenello* v. *United States,* 357 U. S. 480.

Moreover, in *Wong Sun* v. *United States,* 371 U. S. 471, the court held that all evidence seized and incriminating statements elicited from one whose arrest had not been made with probable cause were not admissible at his trial. And in *Mapp* v. *Ohio,* 367 U. S. 643, the court laid down the rule that all evidence obtained by searches and seizures in violation of the federal constitution is no longer admissible in state courts.

Thus the arrests of defendants having been made without warrants or probable cause, we hold that the moneys, documents and statements taken and elicited from them at the time of their detention were inadmissible, and their motions to suppress such evidence should have been granted.

The state's contention that by reason of the decision in *Ker* v. *California,* 374 U. S. 23, it was the province of the trial justice in the first instance to pass upon the validity of the arrest, although correct so far as it goes, is not in our judgment determinative of the issue on the state of the record before us.

The facts in the *Ker* case, *supra,* are clearly distinguishable from the facts in the cases at bar. There the arresting officer relied not merely on information, as in the cases before us, but observed overt acts which gave the officer reasonable grounds to believe that an offense was being committed. No such overt acts are present here. Because of

the admission of illegal evidence the defendants are entitled to a new trial.

In each case the defendant's exception to the denial of the motion to suppress is sustained, and each case is remitted to the superior court for a new trial in accordance with this opinion.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for State.

*Eugene F. Cochran, Aram K. Berberian,* for defendants.