206 A.2d 82.

STATE *vs.* BRADFORD E. DUFOUR.

JANUARY 8, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

CONDON, C. J. This is an indictment which charges the defendant with knowingly having in his possession three reels of obscene motion picture film for the purpose of loan in violation of G. L. 1956, §11-31-1, as amended. The case was tried on the merits to a justice of the superior court and a jury which returned a verdict of guilty. Thereupon the defendant moved for a new trial which was denied. The case is here on his bill of exceptions containing an exception to such denial, an exception to his motion for a directed verdict and numerous other exceptions duly taken to rulings on the admission of evidence.

Included in the bill, however, are two other exceptions taken before trial to rulings of another justice denying defendant's motions to quash the indictment and to suppress the evidence obtained by the state as the result of an alleged illegal search. On our view of such exceptions it will not be necessary to consider any of the exceptions taken during the trial.

It appears from the record that defendant was prosecuted

originally on a criminal complaint and warrant issued out of the district court of the tenth judicial district on September 28, 1961. On September 27, 1961 the same court had issued a warrant to search the automobile of Henry J. Dufour for the above-described film which it was alleged in such warrant was in the possession of said Henry J. Dufour. The return discloses that Captain John J. Marshall searched the automobile on that date and found "three film cans, each containing a pornographic motion picture film, each 8MM Film. Also a paper bag." It also appears therefrom that the officer summoned "the within named Bradford, [sic] E. Dufour, alias John Doe" to appear before the district court as by law required. Bradford E. Dufour is nowhere named in the body of the complaint and warrant to search for obscene motion picture film. On the contrary, as stated above, Henry J. Dufour is the person named therein as the registered owner of the automobile to be searched.

At the trial in the district court defendant waived examination, was adjudged probably guilty and bound over to appear in the superior court to be holden in Providence on the first Monday in March, A. D. 1962, on which day the grand jury for Providence County returned the instant indictment. On April 11, 1962 defendant was arraigned in the superior court and pleaded not guilty.

Thereafter on May 7, 1962 he filed a motion to suppress the evidence obtained by the search and also a motion to quash the indictment. On March 21, 1963 a hearing was had only on the motion to suppress, it being decided by the justice who presided that the decision thereon would be dispositive also of the motion to quash. The parties concurred in that view.

The motion to suppress alleged in substance that the indictment was based upon an illegal search and seizure of defendant in violation of art. I, sec. 6, of the state consti-

tution and that evidence thus obtained is expressly declared to be inadmissible "In the trial of any action in any Court of this State * * *" by G. L. 1956, §9-19-25. The motion to quash alleged that the officer who arrested defendant did not at such time have reasonable ground to believe a felony had been committed or that defendant had committed or was committing it, and that the arrest was illegal and void in violation of P. L. 1941, chap. 982, now G. L. 1956, chap. 7 of title 12.

Three members of the Pawtucket police department, Detective McCarron, Lieutenant Ogni and Captain Marshall, testified in support of the validity of defendant's arrest and the search of the automobile that yielded the evidence upon which the indictment was based. As a result of information from an informer the detective and the lieutenant went to the vicinity of the Novelty Park Club on Division street at about 9:30 o'clock on the night of September 27, 1961.

From their automobile parked on Brewster street which runs off Division street they saw an automobile pull up to the curb at the Peerless A. C. adjacent to the Novelty Park Club and defendant come out of the car with a brown package which he placed on the ground outside the club while he went in. They then saw him come out of the club, pick up the package, throw it on the back seat of the automobile, and walk across the street to a pay telephone.

In the meantime Detective McCarron had gotten out of the police car and walked to a point on the street where he could see into the Peerless A. C. While standing there he testified that defendant came up to him and asked if he was "waiting for Jack." He testified that he did not reply and that defendant then said: " 'I have the film, * * * show me some identification and I will give you the film. * * * For all I know you may be John Law. I could be handing you the film and you put the handcuffs on me.' " When

defendant got no response he went into the Peerless A. C. and sat at the bar.

Lieutenant Ogni testified that he observed defendant stop and talk to Detective McCarron and then enter the Peerless A. C. Thereupon Captain Marshall was called on the police radio and told what the officers had observed. Shortly thereafter the captain arrived at the scene, talked with them, and then all three officers entered the Peerless A. C. where they found defendant and his father Henry J. Dufour. The captain then asked them who owned the car parked out in front. The father answered that it was his car, whereupon the captain asked them to accompany him and the other officers to the police station. The father went in his car driven by one of the officers and defendant went with one of the detectives in the police car.

After they arrived at the station all the officers interrogated the father. He was asked to give them the key to his car which had been parked at the rear of the station and locked. Upon the conclusion of the questioning Captain Marshall then said he was going to get a search warrant to search the car. Sometime later at what time is not precisely fixed in the testimony, although the captain said it was approximately eleven o'clock, the car was searched.

After the search the father was released without any charge being brought against him while defendant was then formally placed under arrest and charged with the offense alleged in the complaint. At this time he was interrogated further and admitted that he was the owner of the film. Later his admission was reduced to a written confession which he signed.

It does not appear that anytime before or during the interrogation he asked for the assistance of counsel or was advised of his right to counsel. The police apparently proceeded on the theory that defendant and his father had only been requested and not compelled to go to the police

station for the purpose of questioning in connection with a general investigation and not to accuse either one at that time of any crime.

Neither in his brief nor in the oral argument does defendant contend that the confession was invalid because he was not assisted by counsel during the investigation or because he was not advised of his right to counsel. His contention on this point is that his arrest was without probable cause prior to the state's knowledge of the evidence obtained by the search and therefore it was illegal and void. Predicated on this contention he argues further that evidence obtained by search warrant incident to a void arrest cannot be used to justify the void arrest as he asserts was done by the police here.

We shall of course consider such contention but we are of the opinion that we should also consider the validity of the confession in the light of its having been obtained without the police previously advising defendant of his right to have assistance of counsel. We are impelled to this course by reason of the recent enunciation by the supreme court in *Escobedo* v. *State of Illinois*, 378 U. S. 478, 84 S.Ct. 1758, of a defendant's right to counsel before he may be subjected to interrogation in an accusatory investigation while in custody of the police.

In *Escobedo* the defendant requested the assistance of counsel and was refused. In this respect that case differs from the case at bar but in the course of its opinion the supreme court made it clear, we think, that the defendant in such circumstances must not only have been advised of his right to assistance of counsel when requested but he must also have been warned of his right to remain silent. "We hold, therefore," the court said, "that where, as here the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police

carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S., at 342, 83 S.Ct., at 795 and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

Our view of the thrust of *Escobedo* has recently been applied by the California supreme court in *People* v. *Dorado*, 40 Cal. Reptr. 264, 394 P.2d 952. In that case as in our case the defendant failed to request counsel but the court was of the opinion that this did not distinguish the case from *Escobedo* saying: "We find no strength in an artificial requirement that a defendant must specifically request counsel; the test must be a substantive one; whether or not the point of necessary protection for guidance of counsel has been reached."

In *Escobedo* the point of such necessary protection was reached in the opinion of the supreme court when the investigation began to focus on a particular suspect then in police custody. This was unquestionably the situation of defendant in the case at bar. For this reason his confession was inadmissible and should have been suppressed.

But aside from that reason we are also of the opinion that the confession and the evidence obtained by the search should have been suppressed because, as defendant rightly contends, at the time of his arrest the evidence shows that the officers had no reasonable grounds to believe that a felony had been committed or was being committed or that defendant had committed or was about to commit it. Until defendant's written statement was admitted over his

objection there was no evidence in the record tending to prove the corpus delicti. Captain Marshall testified that he placed defendant under arrest after the search was made and after defendant's "verbal confession" but before his "written confession was taken." All of the state's testimony was to the same effect.

The state seeks to justify the arrest on the ground that defendant was under suspicion and the evidence disclosed by the search under the search warrant furnished probable cause for placing him under arrest and charging him with the offense alleged in the complaint. This is a mistaken view of the law of arrest and directly contrary to what the supreme court held in *Henry* v. *United States,* 361 U.S. 98, wherein at page 104 it said: "To repeat, an arrest is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen. It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest."

When defendant was taken to the police station for questioning, regardless of whether he was requested rather than ordered to go, and was subjected to an accusatory investigation focused upon him, he was under arrest. *State* v. *Mercurio,* 96 R. I. 464, 194 A.2d 574. That he did not protest the officer's taking him to the police station does not alter the case. The supreme court has long since held that probable cause for arrest could not be inferred from defendant's failure to make such protest. *United States* v. *Di Re,* 332 U. S. 581. There it said at page 594: "It is the right of one placed under arrest to submit to custody and to reserve his defenses for the neutral tribunals erected by the law for the purpose of judging his case." In that case the government sought to do what the state is seeking here, support its arrest by means of evidence obtained by a search subsequent to the arrest. But the supreme court disposed

of this contention in short order saying: "We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success."

In *State* v. *Mercurio, supra,* the defendant was taken to police headquarters where he was questioned and made incriminating statements. He was then fingerprinted and released but was arrested the next day on a warrant procured on the basis of such statements. We held that the arrest was unlawful in violation of §12-7-3, and that the arrest was violative of the fourth amendment to the federal constitution which is applicable to arrests as well as to unreasonable searches and seizures, citing *Giordenello* v. *United States,* 357 U. S. 480. We also pointed out that *Ker* v. *California,* 374 U. S. 23, was distinguishable in that there the officer observed overt acts of the defendant which led him to believe an offense was being committed.

In the case at bar the officers observed no such overt acts but acted upon mere suspicion in taking defendant to the police station. In other words at that time they were without any grounds of probable cause that a felony had been committed or that defendant was committing one. "It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion, see *Henry* v. *United States,* 361 U. S. 98, 101, though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause—evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed, *Carroll* v. *United States,* 267 U. S. 132, 162—must be measured by the facts of the particular case." *Wong Sun* v. *United States,* 371 U. S. 471, 479.

In our opinion the evidence in the case at bar and the confession of defendant were the fruits of an unlawful

arrest and therefore on timely motion by defendant should have been suppressed. To admit them was clearly a violation of §9-19-25 because such evidence was obtained in a manner not consistent with the provisions of art. I, sec. 6, of the constitution of this state and the fourth amendment to the federal constitution made applicable to the states by the fourteenth amendment. In a very recent case which on its facts is closely analogous to the case at bar the United States Supreme Court reiterated what it had held in *Giordenello* and *Wong Sun, supra. Beck* v. *State of Ohio,* 379 U. S. 89, 85 S.Ct. 223.

The defendant's exceptions 1 and 2 are sustained, and the case is remitted to the superior court with directions to quash the indictment and discharge the defendant.

PAOLINO, J., concurs in the result.

JOSLIN, J., concurring. I would not quash the indictment, but would grant the defendant a new trial and remit the case to the superior court for further proceedings. I base my conclusion on the fifth amendment to the federal constitution.

Specifically, I find error in the procedure followed by the trial court on the question of the voluntariness of defendant's confession. Since defendant did not testify, and his father when called as a witness by the state advantaged himself of his constitutional right not to incriminate himself, the only testimony as to voluntariness came from the police officers. They testified that defendant's confession was made approximately five hours after his original detention and at a time when he had not yet been advised that he was under arrest; that his father, who was ill, had been taken into police custody at the same time that defendant was and that he was released without charges being preferred against him, but only after defendant had confessed; that defendant was subjected to neither duress nor compulsion; and that the confession contained the

recital that defendant made it "without promises, rewards, threats, or coercion, and with my own free will." These are the circumstances attendant upon the making of the confession. When they are examined in their totality, as they must be, *Haynes* v. *State of Washington,* 373 U. S. 503, 83 S.Ct. 1336, there is at least some question, tenuous as it may be, as to whether defendant's will had been so overborne as to make his confession inadmissible because coerced.

When the voluntariness of a confession has been put in issue, the practice in this state requires that the trial justice hold a preliminary hearing on that question in the absence of the jury at which he should determine the coercion issue; that thereafter further testimony be presented to the jury; and that then the issue be submitted to the jury with proper instructions. *State* v. *Boswell,* 73 R. I. 358; *State* v. *Prescott,* 70 R. I. 403; *State* v. *Adams,* R. I., 121 A. 418; *State* v. *Mariano,* 37 R. I. 168; *State* v. *Jacques,* 30 R. I. 578. Our opinion in *State* v. *Crough,* 89 R. I. 338, is distinguishable. I do not reach the question of whether our procedure meets the federal standards enunciated in *Jackson* v. *Denno,* 378 U. S. 368, 84 S.Ct. 1774, and followed in *Boles* v. *Stevenson,* 379 U. S. 43, 85 S.Ct. 174, though whether it does is open to question.

The record here discloses that a preliminary examination was conducted in the absence of the jury at the conclusion of which the trial justice, without making any findings on the coercion issue, ruled in substance that the question of how the confession had been obtained was one of fact for the jury. Thereafter, essentially the same evidence as had been proffered at the preliminary hearing was presented to the jury. In submitting the case to the jury, however, the trial justice did not instruct that it was for them to determine whether defendant's statement had been freely and voluntarily given according to law. The

procedure followed, in my opinion, was improper not only because the trial justice neglected at the conclusion of the preliminary hearing to make any findings of fact on the question of voluntariness, but also because he did not submit that issue to the jury for its determination.

It matters not that defendant neither requested an instruction as to the voluntariness of the confession nor excepted to the trial justice's failure to charge thereon. His failure to submit that issue to the jury "made the whole proceeding a mere pretense of a trial and rendered the conviction * * * wholly void." *Brown* v. *Mississippi,* 297 U. S. 278, 286. When we are satisfied that a defendant's constitutional rights have been violated in this manner in a criminal case, we are not justified in sanctioning those violations because of the defendant's failure to observe procedural technicalities. *Id.* at 287. Nor should we compel a defendant because of a rigid adherence to those technicalities to resort to proceedings for post conviction relief, as he may under *Fay* v. *Noia,* 372 U. S. 391, 83 S.Ct. 822, in order to correct the abuse when it is now within our power to do so. The conviction cannot stand.

I come now to the reasons advanced by the majority for reversal. It finds reversible error in the denial of defendant's motion to suppress. I am unable to agree that *Escobedo* v. *State of Illinois,* 378 U. S. 478, 84 S.Ct. 1758, in the posture in which this case is here, required a suppression of defendant's confession or that either G. L. 1956, §9-19-25, or an application of *Mapp* v. *Ohio,* 367 U. S. 643, mandated the trial justice to grant defendant's motion to suppress the evidence obtained as a result of the search and seizure.

The motion to suppress was directed not to defendant's confession, but to the product of the search. The record of the pretrial hearing on that motion discloses that the arguments of counsel as well as the decision of the trial justice

were concerned solely with defendant's entitlement to claim the benefits accruing to a victim of an illegal search and seizure. Moreover, the suppression of the confession was not argued or considered there, nor was it briefed or argued here. Such being the case, in my opinion, a determination of "the thrust of *Escobedo*" should await a case in which it is at issue.

The majority, however, considers that the question of the suppression of the confession was before the trial court. Without reference to *State* v. *Olivieri*, 86 R. I. 211, which it overrules, the majority relying on "the thrust of *Escobedo*" hold that *under any circumstances* the confession of an accused made while in police custody and after becoming suspect should be suppressed unless prior to the making of the statement he has been given an opportunity to consult with counsel and has been advised of his constitutional rights. The implication of the decision is that the "critical stage" at which the right to counsel attaches occurs when an investigation loses its character as a general inquiry into an unsolved crime and focuses upon a suspect in police custody.

In my opinion the majority unduly extends *Escobedo* beyond where the highest authority stopped. That decision commences with the supreme court saying:

> "The critical question in this case is whether, *under the circumstances*, the refusal by the police to honor petitioner's request to consult with his lawyer during the course of an interrogation constitutes a denial of 'the Assistance of Counsel' * * *." (italics mine)

The phrase "under the circumstances" or words of similar import appear elsewhere in the opinion. *Id.* at 1761, 1763 and 1766. Such words are not included, much less reiterated, in an opinion without reason. Mr. Justice White in his dissent recognizes their purpose when he says, "Although the opinion purports to be limited to the facts of this case * * *." *Id.* at 1767.

The circumstances or facts to which the supreme court limited *Escobedo* are substantially different from those in this case. Escobedo was "a 22-year-old of Mexican extraction with no record of previous experience with the police * * *." *Id.* at 1760. Subsequent to his arrest and interrogation for a fatal shooting, he retained counsel and was released on habeas corpus. Several days thereafter he was named by Benedict DiGerlando, later indicted for murder along with Escobedo, as the person who had fired the fatal shots. Thereupon, after again being taken into police custody, Escobedo was advised that he had been so identified by DiGerlando and was urged to admit the crime. During the interrogation following his second arrest, the police testimony was that he " 'was handcuffed' in a standing position and that he 'was nervous, he had circles under his eyes and he was upset' and was 'agitated' because 'he had not slept well in over a week.' " *Id.* at 1760.

To the suggestion that he confess guilt, he responded that he wanted to speak to his retained lawyer. The request was several times repeated. Notwithstanding that his attorney was at the place of interrogation and had been denied the opportunity to consult with Escobedo, he was told his lawyer "didn't want to see" him. *Id.* at 1760. Indeed, at one point the lawyer and Escobedo "came into each other's view for a few moments * * *." *Id.* at 1760.

In addition, there was testimony that the attorney had been told he would not be allowed to speak to Escobedo until the police interrogation had been completed. Finally, after Escobedo made statements implicating himself in the murder, an experienced assistant state's attorney " 'took' petitioner's [Escobedo's] statement by asking carefully framed questions apparently designed to assure the admissibility into evidence of the resulting answers." *Id.* at 1761. Moreover, throughout the entire course of the interrogation, Escobedo was not advised of his constitutional right to remain silent.

These "circumstances" of *Escobedo* differentiate it from this case. Here, on the record of the pretrial hearing to which we are limited on review of the ruling on the motion, we find no history of prior counsel, no request by defendant for counsel, no demand by counsel to consult with client, no urging of defendant to confess guilt, and no reduction of defendant's statement to written form by an attorney for the state. Even on the assumption that the suppression of defendant's confession was before the trial justice, the dissimilarity in circumstances prevents my concurrence with the majority's view that "the thrust of *Escobedo*" requires reversal.

The majority also holds that the films seized during the search of the father's automobile should have been suppressed. The decisive question on that issue is whether defendant was a victim of the search and seizure. The motion to suppress as well as the evidence at the hearing thereon do not disclose that defendant either alleged or established a possessory or proprietary interest in the automobile searched or in the films seized. In fact, at the pretrial hearing on the motion to suppress, the defendant testified that when he was confronted by the police with the package containing the films and asked whether it was his, the answer was: "I don't know, what is it?" In these circumstances the rule which generally prevails, absent a controlling statute, is that one not a member of the class for whose benefit the constitutional protection exists is without standing to urge the suppression of that which was seized. Annos. 96 L.Ed. 66 et seq., 50 A.L.R.2d 577 et seq. Contra: *People* v. *Martin,* 45 Cal.2d 755; Traynor, Mapp v. Ohio At Large In The Fifty States, 1962 Duke L.J. 319, 335 et seq. This is the rule which the supreme court in *Goldstein* v. *United States,* 316 U. S. 114, 121, said has been adopted by "the federal courts in numerous cases, and with unanimity * * *," and which in *Jones* v. *United States,* 362 U. S. 257, 261, it summarized as follows:

> "Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy. * * * To establish 'standing,' Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched."

Under this rule, defendant does not qualify as a victim.

The rule, however, is not without exception. In *Jones* v. *United States, supra,* the prosecution was for violation of the federal narcotics law and the statutory provisions permitted conviction upon proof of possession without more. There, as here, on the motion to suppress the accused neither alleged nor established a possessory interest in the premises searched or in the property seized. His failure so to do there, as here, was undoubtedly induced by the dilemma with which he was "pinioned." If he admitted possession on the motion to suppress in order to establish "standing," then the prosecution might have offered that admission against him at the trial on the merits. That dilemma, the court in *Jones* observed, had been "pointedly put" by Judge Learned Hand in *Connolly* v. *Medalie,* 58 F.2d 629, at page 630.

> "Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question. The petitioners at bar shrank from that predicament; but they were obliged to choose one horn of the dilemma."

The supreme court found, however, that "Judge Hand's dilemma is not inescapable," *id.* at 263, and it relaxed the construction usually given to Rule 41(e) of the Federal

Rules of Criminal Procedure holding that in cases where proof of possession alone will convict, a motion to suppress may be made during as well as before trial.

*Jones* v. *United States, supra,* does not help this defendant even if under our procedure consideration of the motion to suppress could have been deferred until conclusion of the state's case, thereby freeing defendant from his dilemma. In *Jones* conviction could have been obtained solely upon proof of possession; here proof of possession of the obscene films without more was not enough to convict. This defendant was charged with possession *for the purpose of loan* in violation of G. L. 1956, §11-31-1, as amended. Under that charge it was incumbent upon the state to prove that defendant's intention in possessing the films was for the purpose of lending them. *State* v. *Ephraim,* 80 R. I. 321, 326. In the circumstances of this case adherence to *Jones* does not necessitate a modification of the rule as to "standing."

*Mapp* does not change the requirement as to "standing." That decision makes binding upon the state the constitutional prohibition against convicting an accused "of crime by using testimony or papers obtained from him by unreasonable searches and seizures as defined in the Fourth Amendment." *Ker* v. *California,* 374 U. S. 23, 30. In my opinion, federal standards do not confer on this defendant standing to invoke the guarantee of the fourth amendment.

The majority, however, in addition to finding a violation of defendant's safeguards under the fourth amendment also grounds its decision on §9-19-25 which provides that:

> "In the trial of any action in any court of this state, no evidence shall be admissible where the same shall have been procured by, through or in consequence of any illegal search and seizure as prohibited in section 6 of article 1 of the constitution of the state of Rhode Island."

That section was enacted prior to the decision in *Mapp*

and less than two months after our decision in *State* v. *Olynik*, 83 R. I. 31. There a majority of this court refused to apply in state prosecutions the exclusionary rule then prevailing in the federal courts under *Weeks* v. *United States*, 232 U. S. 383. The coincidence in time of the decision in *Olynik* and the enactment of §9-19-25 is clear, if not compelling, indication of a legislative purpose to supply an evidentiary rule which the judiciary had rejected.

So viewed, the legislative intent was to remedy what Mr. Justice Condon, now chief justice, in his dissent in *Olynik* characterized at page 48 as "a massive breach in that bulwark of liberty [sec. 6, art. 1, of the state constitution]" which gave license to "lawless enforcement officers that they may invade any man's home and rummage among *his* private papers and possessions * * *." (italics mine) It was a *victim's* right of privacy which was the subject matter of the legislative concern and not the protection of one not a member of the class entitled to claim the benefits of the constitutional guarantee. I see no reason for extending the benefits of §9-19-25 to those, such as the defendant, upon whom the legislature did not intend to confer them.

Roberts, J., concurs in the opinion of Joslin, J.


*J. Joseph Nugent*, Attorney General, *Stephen F. Mullen,* Special Counsel, for State.


*Ralph Rotondo, Arthur M. Merolla,* for defendant.