216 A.2d 357.

STATE *vs.* WALTER J. McWEENEY.

JANUARY 26, 1966.

PRESENT: Roberts, C. J., Paolino and Joslin, JJ.

PAOLINO, J. This is a criminal complaint charging that the defendant "Did knowingly have in his possession a certain slip or certificate such as is used in carrying [sic] on, promoting and playing the game commonly known as policy-lottery or policy."

The defendant has briefed and argued only his exceptions to the denial of his motion to suppress and to the denial of his motion for a direction of acquittal. Under our well-established rule his other exceptions having been neither briefed nor argued are deemed to be waived. *Labbe* v. *Hill Brothers, Inc.*, 97 R. I. 269, 197 A.2d 305.

After a careful review of the record we deem it necessary to consider only the exception to the denial of his motion to suppress. The principal thrust of the motion is that the evidence on which the criminal complaint is grounded was procured by, through or in consequence of an illegal search

and seizure in violation of his constitutional rights under art. XIV of amendments to the federal constitution and art. I, sec. 6, of the state constitution. We shall examine briefly the evidence pertinent to this issue as it appears in the transcript of the hearing on the motion to suppress.

At approximately 12:15 p.m. on the day of defendant's arrest, officers James H. Dodd, Jr., and Joseph R. Gonsalves of the Providence Police Department's C-squad went to a barroom in Providence, according to officer Dodd's testimony, as a result of "numerous complaints that the defendant was accepting horse and number pool bets at that establishment." The defendant had been employed there for some years as a bartender, but he was not on duty on the day in question. Officer Dodd testified that he did not know who made the complaints and there is no evidence in the record indicating that anyone knew the identity of the person or persons claimed to have made such complaints.

Upon arriving at the bar the officers looked through the front window of the barroom and saw defendant sitting at a table with two men who were talking to him. The defendant had his head down writing on something with a pencil, but they were then unable to see what he was writing on because he had his left hand cupped around it. They then entered the bar. Officer Dodd testified that as he entered the front door, he went immediately toward the table at which defendant was seated; that as he opened the door, defendant looked up, recognized him, and removed a "bill" from the table on which he was writing; and that he placed the bill in his left trouser pocket and the pencil in his jacket pocket. Officer Dodd testified that after he entered the bar and before defendant picked up the bill, he "could see at that time it was a bill. What denomination, I couldn't see. It was the bill he put in his left trouser pocket."

Officer Dodd then asked defendant what he had put in

his pockets and defendant replied "Nothing." The officer then asked defendant to empty his left trouser pocket on the table, with which request defendant complied. There was a roll of bills and a one-dollar bill separated from the roll. In further compliance with the officer's request defendant put the pencil on the table. The dollar bill was crumpled and had various numbers written in pencil upon its face. Officer Dodd identified the numbers as being number pool bets. This dollar bill, which the officers testified was the object upon which defendant was writing when they first observed him, was the subject of defendant's motion to suppress which was heard and denied by a justice of the superior court before trial of the case on the merits. It was subsequently introduced into evidence over defendant's timely objections at his trial on the merits.

The testimony of officer Gonsalves substantially corroborated that of officer Dodd. He testified that when officer Dodd walked over to defendant's table, the latter "became quite excited and put the pencil in his pocket, and picked up a bill from the table; that is when I saw what he was writing on."

In his decision the trial justice said: "The Court is completely satisfied that the officers entered the bar and were aware that a misdemeanor had been committed, or had been committed in their presence; and in view of the law, which is Section 12-7-3, they were entitled to make the arrest without a warrant, and the search that was made of the defendant was completely incidental to the arrest, and for that reason, the defendant's motion to suppress the evidence is denied and the defendant's exception is noted."

General laws 1956, §12-7-3, in pertinent part reads as follows:

"A peace officer may without a warrant arrest a person for a misdemeanor, whenever:

(a) The officer has reasonable ground to believe that a misdemeanor has been or is being committed

in his presence and that the person to be arrested has committed or is committing it."

The primary question raised by the instant exception relates to the validity of defendant's arrest without a warrant. It appears from the trial justice's decision that he concluded that a valid arrest had been made by the officers and that officer Dodd's request that defendant empty the contents of his pockets on the table was a search incidental to a valid arrest and therefore lawful. We disagree with his conclusion with respect to the validity of the arrest. In our opinion the evidence does not satisfy the requirements of law, state or federal, warranting an arrest without a warrant for a misdemeanor.

The law governing such arrests is generally well settled. See *State* v. *Mercurio*, 96 R. I. 464, 194 A.2d 574. See also Arrest, The Decision to Take a Suspect into Custody, By Wayne R. LaFave, particularly chap. 11, at p. 231, entitled "Misdemeanor Arrest: The 'In-Presence' Requirement." The difficulty arises in applying the law to specific cases; such is the situation before us presently.

We keep in mind that we are considering an arrest without a warrant in a misdemeanor case. We would agree with defendant's contention that the statement of the trial justice that the officers "were aware that a misdemeanor had been committed, or had been committed in their presence" is an incorrect statement of the law if such statement stood alone. But it does not stand in a vacuum; it is part of the decision of the trial justice wherein he discussed the pertinent evidence. From a reading of his decision as a whole we are satisfied that the trial justice was aware of the law applicable to arrests without warrants in misdemeanor cases, but he was not warranted in applying the same in the case at bar.

The court discussed this problem at some length in *Mercurio, supra*. Repetition of what was said in that case will serve no useful purpose. Suffice to say that the federal

standard must be satisfied in a case such as this. Section 12-7-3 (a), which provides that a peace officer may without a warrant arrest a person for a misdemeanor whenever the officer has reasonable ground to believe that a misdemeanor has been or is being committed in his presence and that the person to be arrested has committed or is committing it, meets the federal standard with respect to the requirement of the necessity of the existence of "reasonable" grounds. The terms "reasonable ground" and "probable cause" in this area of the law mean substantially the same thing. See *Wong Sun* v. *United States,* 371 U. S. 471. See also *Draper* v. *United States,* 358 U. S. 307.

In *Brinegar* v. *United States,* 338 U. S. 160, 175, probable cause is defined as follows: "where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."

Applying this test to the facts here, what do we find? We have the statement of two officers that as a result of complaints from unknown persons "that the defendant was accepting horse and number pool bets at that establishment" they went to the bar in question. There is no evidence as to the reliability of such informants; there could not be in the circumstances. As the court said in *Wong Sun, supra,* at page 479:

> "Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed. The threshold question in this case, therefore, is whether the officers could, on the information which impelled them to act, have procured a warrant for the arrest of Toy. We

think that no warrant would have issued on evidence then available."

What more does the record show? The officers testified that they saw him writing on something when they entered the bar, but neither officer actually saw what defendant was writing on. Officer Gonsalves testified that "Mr. McWeeney became quite excited and put the pencil in his pocket, and picked up a bill from the table; that is when I saw what he was writing on." This statement is merely his conclusion, but it is not a statement that he actually saw defendant write on the bill in question. In the latter part of his testimony officer Dodd frankly admitted that he never saw what defendant was writing. It is apparent that the officers were suspicious of defendant's activities, but probable cause must be based on more than mere suspicion. *Henry* v. *United States,* 361 U. S. 98, 104.

The arrest took place when officer Dodd asked defendant to empty his pockets. At this point, in our opinion, the knowledge in the hands of the officers did not support a "man of reasonable caution in the belief" that defendant had committed a misdemeanor in his presence. See *Carroll* v. *United States,* 267 U. S. 132, 162. The arrest, being invalid, cannot be justified by the search made incidental to it. As the court said in *Henry* v. *United States, supra,* at page 104: "To repeat, an arrest is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen. It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest."

The state's contention that the evidence in question was not obtained by a search of defendant is without merit. Officer Dodd's request that defendant empty his pockets was in effect an order which defendant could not very well refuse to obey. He was then under arrest—two officers of the law were physically there to enforce the request. The

cases cited by the state are distinguishable from the case at bar and, therefore, not in point. Had the arrest been lawful, the officers would unquestionably have had the right, without a search warrant, to make a contemporaneous search of the person of the accused. See *Abel* v. *United States*, 362 U. S. 217, 235.

We hold that on this record the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were not sufficient in themselves to justify a man of reasonable caution in the belief that a misdemeanor had been or was being committed in their presence. The arrest of defendant having been made without warrant or probable cause, it follows that the evidence obtained from him at the time of his unlawful arrest was not admissible at his trial, and his motion to suppress such evidence should have been granted. *State* v. *Mercurio, supra.* In so holding we are not unmindful of the rule that "There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them." *Brinegar* v. *United States, supra*, p. 173.

In view of our determination of the instant exception we do not reach the defendant's remaining exception. Because of the admission of illegal evidence the defendant is entitled to a new trial.

The defendant's exception to the denial of his motion to suppress is sustained, and the case is remitted to the superior court for a new trial in accordance with this opinion.

*J. Joseph Nugent*, Attorney General, *Corinne P. Grande*, Special Counsel for State.

*Gallogly, Beals & Tiernan, Robert O. Tiernan, James M Jerue,* for defendant.