300 A.2d 267.

STATE *vs.* RICHARD JOHN HARRIS.

FEBRUARY 13, 1973.

PRESENT: Roberts, C.J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.   A jury in the Superior Court for Providence and Bristol Counties found Richard John Harris guilty of murder in the second degree.   Following the trial justice's denial of his motion for a new trial, Harris was sentenced to serve a term of thirty years and was committed without bail to the Adult Correctional Institutions.   The case is now here on his bill of exceptions.   The only exceptions he presses are to the admission into evidence of his oral confessions, and to the denial of his motion to quash the indictment.

On July 6, 1970 defendant, president of a motorcycle club known as the East Coast M.F., met with other members of that club and a group from another motorcycle club, the Hell's Angels.   They decided to look for Dennis J. Mulhearn in order to ascertain whether he had falsely claimed membership in Hell's Angels.   He was located in Bristol. After satisfying themselves that he had worn a Hell's Angels jacket, even though not a member of the club, they beat him into unconsciousness and then took him to Providence in defendant's automobile.   There, he was again beaten, but this time only members of the Hell's Angels participated.   Their tools were an old shillelagh and a "broken down pool cue."   When attempts to revive him were unsuccessful, defendant took the victim's body and dumped it into the Providence River.   On July 10, the corpse was found floating in that river south of the Gulf Oil Company's dock in East Providence.   When defendant read of this in the local press he left for Canada where he was taken into custody by Canadian authorities.

During the intensive police investigation which followed the discovery of Mulhearn's corpse, defendant was questioned several times and eventually inculpated himself in the homicide.   The circumstances attendant upon his incriminatory statements were developed at a preadmission evidentiary hearing which was held in the absence of a jury.

The record of that hearing discloses that his first admission was made on July 21, 1970 to Detective-Lieutenant Tocco of the Rhode Island State Police who, in connection with his investigation of the Mulhearn slaying, interrogated defendant at a police station located at Three Rivers, Canada.

Defendant was next questioned by Detective-Sergeant Broadmeadow of the state police. The date was July 31, 1970; the place, the local jail in Newport, Vermont, where defendant was being held after deportation from Canada. He then admitted, as he had previously to Lieutenant Tocco, that he was responsible for Mulhearn's death.

Finally, while en route from Vermont to Rhode Island and again at the state police barracks in North Scituate, he told Detective Cunningham of the state police that he was to blame for Mulhearn's death. These admissions, unlike those which came before, followed a telephone conversation with an attorney of his own choice and a hearing before a Vermont court at which he waived extradition.

We are aware that at the hearing preceding the admission of his confessions, defendant denied that any of the three officers to whom he allegedly confessed warned or advised him of his constitutional rights in the manner required by *Miranda* v. *Arizona,* 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He does not now, however, assign as error either the trial justice's finding that those warnings and advice were in fact given, or their legal sufficiency.

The defendant argues instead that his incriminating statements should have been rejected as evidence because they were procured while he was unlawfully detained. He does not make clear, however, whether he is claiming that he was unlawfully in custody during each of the interrogations, or only during the questioning by Lieutenant Tocco on July 21, which resulted in his first confession. It mat-

ters little, however, which is his theory.[1] Both, at least initially, depend upon an illegal Canadian detention. This is the approach he takes when, in his brief, he states as fact that his Canadian interrogation took place while in Lieutenant Tocco's custody under a warrant which he says was issued in this state after the police received an anonymous telephone call identifying him as Mulhearn's killer and advising that he could be found in Canada. Predicated upon those factual assertions he argues that his detention by Lieutenant Tocco under the warrant was without probable cause and therefore illegal.

The defendant's argument suffers from several deficiencies. The most obvious is that the underlying facts relied upon are not backed up by references to where in the record the testimony from which they purportedly stem can be found. When challenged by the prosecution during oral argument for failure in this respect and for noncompliance with our rule on briefing requirements,[2] he was

---

[1]We do not reach the question of whether in either or both instances we would exclude his admissions. We did construe *Wong Sun* v. *United States,* 371 U. S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) as binding upon us, and as barring the admission of an incriminating statement elicited from one while illegally detained. *State* v. *Mercurio,* 96 R. I. 464, 194 A.2d 574 (1963); *accord, State* v. *Dufour,* 99 R. I. 120, 206 A.2d 82 (1965) (opinion of Condon, C.J.). *Mercurio,* however, did not decide whether the primary taint resulting from an illegal arrest could be purged by a subsequent event such as the passage of time or the timely extension of the *Escobedo* or *Miranda* warnings. For a general discussion *see* Pitler, *'The Fruit of the Poisonous Tree' Revisited and Shepardized* 56 Calif. L. Rev. 579, 594-604 (1968); Ruffin, *Out on a Limb of a Poisonous Tree: The Tainted Witness* 15 U.C.L.A. L. Rev. 32, 64-70 and n. 120 (1967).

[2]Our currently effective Rule 16(a) in pertinent part provides:
"In cases where it may be necessary for the court to examine the evidence, the party shall specify in his brief the leading facts which he deems to be established by the evidence, with a reference to the pages of the record and the appendix where the evidence of such facts may be found, which references will be relied upon by the court in its consideration of such facts. Ordinarily the court will not consider evidence not referenced in conformity with this subdivision."

unable to point to any record source. He then requested, and we granted, time within which to file a supplemental brief containing the appropriate references. He has not availed himself of the opportunity thus extended and we cannot, therefore, give credence to the unsupported evidentiary premise upon which he rests his legal argument. Without that support his argument is illusory.

The defendant also urges his exception to the denial of his motion to quash the indictment. That motion was made after both sides had rested and the ground was the variance between the indictment and the proof relied upon to establish defendant's participation in the offense. The former alleges that the murder was committed in Providence County; the latter shows only that he took part in the beatings inflicted upon the decedent in Bristol County and not in those perpetrated by the Hell's Angels in Providence County.

Before the trial justice, defendant did not contend that an allegation of the particular place where death occurred or the fatal blows were struck was descriptive of the offense charged or essential to the validity of the indictment.[3] Neither did he assert that the variance complained of surprised, misled or hindered him in the preparation or presentation of his defense, or that the variance exposed him to the danger of a second prosecution for the same offense.

---

[3]Perhaps his reason for not so doing was that in enacting G. L. 1956 (1969 Reenactment) §§12-12-3, 12-12-6, and 12-12-7, our Legislature established a clear scheme for the protection of indictments when it provided that no indictment "* * * shall be abated or quashed for any want of form * * * or because it * * * omits to allege the time and *place* of the commission of the offense, unless such * * * time, or *place,* is an essential element of the offense; provided it contain such allegation of the offense that the accused is informed of the nature and cause of the accusation." (§12-12-3) (emphasis added); that an indictment is valid and sufficient if it charges the offense "(a) By using the name given to the offense by common law" (§12-12-6); and that an indictment for murder may be stated in the following manner: "A.B. murdered C.D." (§12-12-7).

Instead, he argued only that the admission of evidence of what he had done in one county, though not objected to on variance grounds when proffered, was nonetheless prejudicial per se on an indictment charging him with having committed an offense in another county.

Confronted with that approach the trial justice concluded —and quite properly so — that the discrepancy between the averment and proof did not affect defendant's substantial rights and was therefore not fatal. He relied in part upon §12-12-10. Where material, that section reads as follows:

> "A defendant shall not be acquitted or discharged on the ground of variance between the allegation and proof if the essential elements of the crime are correctly stated in the complaint or indictment, unless he is thereby prejudiced in his defense."

Before us, however, defendant abandoned the prejudicial per se argument and proceeded on an entirely new tack twofold in nature. First he claims that §12-12-10 violated his constitutional rights under the fifth and fourteenth amendments to the federal constitution because it imposed upon him the burden of proving that he had been prejudiced by the disagreement between the *allegata* and the *probata*.

This argument comes too late for it is settled that constitutional objections of this kind, if they are to receive our consideration, must be brought upon the record before the tribunal below with clarity and particularity, *Revenelle* v. *City of Woonsocket*, 73 R. I. 270, 54 A.2d 376 (1947), and must state separately and in clear and direct language each specific article, section and clause of the federal or state constitution that has allegedly been violated. *Haigh* v. *State Board of Hairdressing*, 74 R. I. 106, 58 A.2d 925 (1948). This has not been done.

Finally, defendant argues that the Superior Court for the county of Providence lacked jurisdiction to try him for acts

allegedly committed in Bristol County. This argument has its origin in the common law where a person could not be put on trial except in the county where the crime charged was alleged to have been committed. *State* v. *Barella,* 73 R. I. 367, 56 A.2d 185 (1947). Subject to minor exceptions, that is still the law, and §12-17-1 stipulates that

> " * * * unless otherwise provided by law, such trial shall be held before the superior court in the county in which the offense may lawfully be alleged to have been committed or shall have been committed, and not elsewhere, but this provision and all other general and special provisions fixing the venue of criminal actions shall be *subject to the exception* that proceedings by indictment or on appeal for offenses alleged to have been committed or committed in the county of Bristol shall be had in the county of Providence." (emphasis added)

The operative effect of this exception is to include within the lawful jurisdictional limits of the Superior Court sitting in Providence County all offenses committed or alleged to have been committed within the territorial boundaries of Providence and Bristol Counties. Thus, evidence that an offense has been committed either in Providence or Bristol County is available as proof under an indictment stating the venue as being in the county of Providence. There is no merit, therefore, to the objection that venue has been laid in Providence County for an offense alleged to have been committed in Bristol County.

The defendant's exceptions are overruled and the case is remitted to the Superior Court for further proceedings.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Doris did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Edward E. Dillon,* Special Asst. Attorney General, for plaintiff.

*Harvey Brower,* for defendant.