## Dale v. Commonwealth.

### (Decided January 16, 1920.)

### Appeal from Perry Circuit Court.

1. Arrest—Mode of Making Arrest—Instructions.—An officer, in making an arrest, is excused from complying with the requirements of section 39 of the Criminal Code if the offender knows the offense with which he is charged and of the intention to arrest him, and where the uncontradicted proof shows such facts, it is not necessary for the court to submit to the jury in its instructions such requirements.

2. Arrest—Duty of Defendant to Surrender to Officer—Instructions.—It is the duty of one charged with an offense, and who knows the offense with which he is charged and of the intention to arrest him, to surrender to the officer attempting to make the arrest, unless at the time he is immediate danger, real or apparent, of death or great bodily harm at the hands of the officer, and that he can not avert such danger, real or apparent, by surrendering, in which latter event only would he be justified in using such force as might be necessary to avert the danger, and an instruction incorporating the above facts is not erroneous.

H. C. EVERSOLE and MORGAN & NUCHOLS for appellant.

CHARLES H. MORRIS, Attorney General, and BEVERLY M. VINCENT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Upon his trial under an indictment in the Perry circuit court charging him with murdering Odell Petrey, the appellant, James Dale, was convicted and his punishment fixed at confinement in the penitentiary during his life, and to reverse that judgment he prosecutes this appeal.

A brief statement of the substantial facts is: That appellant was arrested by one Leonard Ketchum, a deputy sheriff, on Sunday night before the killing on Monday night, for the offense of having in his possession whiskey, for the purpose of sale, contrary to law, at which time the deputy sheriff found in appellant's possession sixty-four (64) pints of whiskey. Shortly after the arrest the appellant escaped from the custody of the officer, and the latter, with a summoned posse, made search for him until about twelve o'clock that night, which search was resumed the next (Monday) morning and continued until between seven and eight o'clock that night, when the officer with the deceased, who had been summoned by him, came upon the appellant in the mining town of Typo, and in endeavoring to arrest him he shot and killed the deceased with a shot gun. The appellant was found behind a box car, and the officer, according to his testimony, said to him, "Stop there! Halt!" to which appellant gave no heed and ran about the distance of one and one-half car lengths, when deceased threw a flashlight upon him, immediately after which the fatal shot was fired, resulting in the almost instantaneous death of deceased. As to what occurred at this time, appellant testified as follows:

"I come on down to Typo; I kept watching for them to come the other way, from up the creek, and I stopped at this car there and leaned up against the car and rolled a cigarette, and when I lit the cigarette I heard Leonard Ketchum say: 'There's the son of a bitch, kill him,' and when he said that I stepped around the corner of the car and started to run down the track and when I come up to these other cars there the light flashed up in front of me and I wheeled around, and as I wheeled around he had his gun up like that (shows) and when I seen that, as I come around, I had my gun in my hand and I just raised it up and pulled the trigger."

He said that the deceased said nothing at the time and that he did not know the person with the flashlight and at whom he fired the shot.

Appellant had not been living in that vicinity but a short while, and it is shown without contradiction or objection that he had engaged in the unlawful business of selling whiskey almost from the time he came into that community from the state of Montana. He is about 35 years of age, and the greater part of his life has been spent in wandering through the different states of the west.

According to the testimony of the appellant he procured the gun with which he did the killing from an unknown person whom he designates as "Tennessee," and he states that this unknown friend, whom he did not produce or attempt to produce at the trial, gave him the gun between the time of his escape and the time of the killing so that he might protect himself against threats which he claims the officers made against him.

A witness for the Commonwealth testified that on Monday afternoon and the early part of the evening he saw appellant with the gun and he stated that "A fellow that works up at Hazard Junior today wouldn't work there tomorrow." Another witness testified that appellant, on the same day, made the statement that he was "going down the road and get him a man." To still another witness the appellant said "Carter Combs, there is room in hell for fellers that give me away," and to another he said "I am going to get me one tonight, by God." None of these threats were denied by the appellant, and he admits not only that he knew that the officer and his posse were searching for him, but that he also knew of the presence of the officer at the time and place of the killing.

A number of grounds for a new trial are set out in the motion made therefor, but only two of them are insisted upon in brief of appellant's counsel, they being (1) that instruction No. 4 is erroneous, and (2) that the court failed to give to the jury by its instructions the whole law of the case, and it might be here said that these two grounds are the only ones worthy of consideration.

(1)   The complained of instruction No. 4 says:

"Although you may believe from the evidence beyond a reasonable doubt that the defendant had in his possession spirituous, vinous or malt liquors for the purpose of sale in Perry county, in the presence of Leonard Ketchum, on the day before the killing; that the said Ketchum arrested the defendant for the offense of having in his possession spirituous, vinous or malt liquors

for the purpose of sale in Perry county; that the defendant escaped custody and that the said Ketchum had summoned the deceased, Odel Petrey, to assist him in the rearrest of the defendant, and while the said Ketchum and the deceased were endeavoring to rearrest the defendant for that offense, yet if you further believe from the evidence that while said Ketchum and the deceased, Petrey, were endeavoring to rearrest the defendant, the defendand did not resist the arrest by force or violence, and that the deceased, Odell Petrey, or the said Ketchum began an attack on the defendant with guns or pistols, from which defendant believed and had reasonable grounds to believe, in the exercise of a reasonable judgment, that he was in immediate danger of death or some great bodily harm at the hands of said Ketchum and the deceased Petrey, or either one of them, and that to surrender to them would not avail him safe means of averting the danger, real or apparent, and was his only safe means in the exercise of a reasonable judgment, to so shoot and kill the said Petrey, and that the defendant did shoot and kill said Petrey for that purpose, then you will acquit the defendant on the ground of self-defense or apparent necessity therefor.''

It is insisted that this instruction does not properly submit, under the circumstances, the appellant's right to shoot and kill the deceased in his own defense, but we are unable to agree with this contention. Appellant occupied a different position toward the officer and those summoned to assist him in making the arrest than would one not charged with the commission of an offense. He not only knew that he was guilty of the offense of having in his possession spirituous liquors for the purpose of unlawful sale, but that he had also committed the additional offense of escaping from the custody of an officer while under arrest; furthermore, he knew that he was being pursued by the officer and others summoned to assist him, for the purpose of rearresting him.

When overtaken by the officer or member of his posse it was plainly the duty of appellant to submit to the arrest and offer no resistance thereto, unless he was then and there threatened with real or apparent impending danger to his life, or of suffering great bodily harm at the hands of the arresting party, and to avert that danger it was necessary, or appeared to him in the exercise of a reasonable discretion to be necessary, to resist

the arrest, in which case he could resist even to the extent of taking the life of the one offering the danger. But even in such case if the danger, actual or apparent, could be averted by surrendering, and without using force, it was the duty of the appellant to do so. This view of the law was aptly submitted in the complained of instruction, and it does not therefore merit the criticism made by counsel. Music v. Commonwealth, 186 Kentucky 45.

Under ground (2) above, counsel insists that it was the duty of the court to tell the jury that it was the officer's duty to inform appellant of the intention to arrest him, and the offense for which he was being arresed. Ordinarily these duties are required of an officer in making an arrest (Criminal Code, section 39), but he need not observe them when the offender knows that he is being pursued for the purpose of arrest, and knows the offense with which he is charged. Hickey v. Comlth., 185 Ky. 570, and cases therein referred to. It was therefore unnecessary, under the facts of this case, for the court to submit to the jury in any instruction the matters complained of.

Finding no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.