**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Llewellyn McGAVIC, Defendant-Appellant.**

**No. 15470.**

United States Court of Appeals Sixth Circuit.

Oct. 6, 1964.

Frank E. Haddad, Jr., Louisville, Ky., for appellant.

Wayne J. Carroll, Louisville, Ky. (William E. Scent, U. S. Atty., Louisville, Ky., on the brief), for appellee.

Before CECIL, O'SULLIVAN and EDWARDS, Circuit Judges.

CECIL, Circuit Judge.

This is an appeal from a judgment of conviction of the appellant in the United States District Court for the Western District of Kentucky. The appellant was tried to a jury on an information charging him with using slugs in a vending machine, in violation of Section 491(a), Title 18 U.S.C.[1]

1. "(a) Whoever, being 18 years of age or over, not lawfully authorized, makes, issues, or passes any coin, card, token, or device in metal, or its compounds, intended to be used as money or whoever, being 18 years of age or over, with

On January 3, 1963, as Mr. Lloyd K. Lindsey was driving past the Kwick-Kleen Laundry, in Louisville, Kentucky, he observed the appellant, Llewellyn Mc-Gavic, and his co-defendant, John P. Rosenbarger, Jr., in the laundry, standing next to two coin changers. Mr. Lindsey managed the laundry for his mother. He stopped his car and watched the two men from across the street. Mr. Lindsey did not see either man take any money from the coin changers nor did he see what they may have put into them. His suspicion was aroused because they stood in front of the machines for some time and he called the police.

When the police arrived, the men were just running from the door of the laundromat to a 1957 Plymouth automobile parked in front of the laundry. They entered the car and turned the lights on. At that time they were stopped, taken out of the car, placed under arrest and searched. They were taken to police headquarters and booked on a charge of "vagrancy investigation." This was described as "a technical charge which the city police use to investigate an offense which they believe to have happened." The arrests were made without a warrant.

After the arrest the coin changers were opened and the change boxes withdrawn. On top of the boxes there were numerous slugs. On the bottom of the boxes there were some silver quarters. One machine was empty and would not release any more quarters. There were 45 copper colored slugs in one change box and 53 in the other one.

About two and a half hours after the arrest the appellant was interviewed at police headquarters by Alvin W. Dickerson, a special agent of the United States Secret Service. The appellant did not deny being in the laundromat. When he was questioned about the slugs, he at first denied any knowledge of them. He then made the statement: "I will say this; I did not make these slugs and if I talked I would have to leave Louisville." He inquired if similar slugs had been received in the Louisville area within the past week.

At the trial the judge ruled that the arrest was illegal for the reason that there was no offense of vagrancy investigation known to Kentucky law. He did not permit any articles obtained by the search to be admitted into evidence. He did, however, permit agent Dickerson to testify to the statements made by the appellant at police headquarters. One of the questions presented on this appeal concerns the admission of these statements. It is claimed that since the arrest was illegal any statement made by the appellant while in custody under that arrest was incompetent and inadmissible in evidence. This has been referred to as the "poisonous tree" doctrine. If the tree is poisonous, the fruits from it are likewise poisonous. Because of our conclusion that McGavic's admissions were properly received in evidence, we need not consider the question of the legality of his arrest.

Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, is the most recent case involving the extent of the "poisonous tree" doctrine. There the Court held that the declarations of Toy made in his bedroom simultaneously with the arrest were inadmissible. In the same case the Court held that the unsigned confession of Wong Sun made upon his voluntary return to police headquarters several days after he had been

intent to defraud, makes, utters, inserts, or uses any card, token, slug, disk, device, paper, or other thing similar in size and shape to any of the lawful coins or other currency of the United States or any coin or other currency not legal tender in the United States, to procure anything of value, or the use or enjoyment of any property or service from any automatic merchandise vending machine, postage-stamp machine, turnstile, fare box, coinbox telephone, parking meter or other lawful receptacle, depository, or contrivance designed to receive or to be operated by lawful coins or other currency of the United States, shall be fined not more than $1,000.00 or imprisoned not more than one year, or both." Section 491(a), Title 18 U.S.C.

released on his own recognizance was admissible. Following Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307, the Court held that the connection between the arrest and the statement had "become so attenuated as to dissipate the taint."

The government claims here that the taint of the illegal arrest of McGavic was dissipated for the following reasons: 1. McGavic's statement was not contemporaneous with the arrest. Sufficient time elapsed between the arrest at 8:30 p. m. and the interrogation at 11:00 p. m. to dissipate the taint. 2. The federal officers who interviewed McGavic did not participate in the arrest, had no control over the officers who did participate and were totally unrelated to the officers who made the illegal arrest. 3. The defense attorneys were given the federal agent's notes of the interview and no claim was made that the interview was conducted improperly or that the admissions were not made voluntarily. 4.. There is no indication in the record to show that the fruits of the illegal search were used in the interview. Only the slugs taken from the coin machine were used. 5. The interview took place out of the presence of the arresting officers and without their assistance.

In the Wong Sun case the statements of Toy made simultaneously with the illegal arrest and the unsigned confession of Wong Sun made several days thereafter are at opposite ends of the pole in considering the fruit of the poisonous tree. Between these two extremes there is a line, on one side of which the fruit is contaminated by the illegal arrest, and on the other side of which the taint has been dissipated. Where this line shall be drawn is a question of fact to be determined in each case. In our case the district judge found that the statements of the appellant were not contaminated by the illegal arrest and, applying the rule of evidence on admissions against interest, permitted agent Dickerson to give testimony of the statements now in question.

Considering all of the facts and circumstances of this case, we conclude that the factual finding of the district judge was not clearly erroneous and that there there was no error in the admission of this testimony.

We are further of the opinion that no prejudice resulted to the appellant by reason of the introduction of the questioned statements into evidence. The evidence of guilt was overwhelming. Mr. Lindsey observed the appellant and his co-defendant for about fifteen minutes standing by the coin changers. They were putting something into the changers, turning the handle and taking something out. There was a constant repetition of this process. There was evidence that these men ran from the laundromat to their car when the police came. Immediately after the arrest and before anyone else used the machines, the tops of the coin boxes were covered with slugs.

Another claim on behalf of the appellant is that the court erred in answering questions of two jurors. Mrs. Eschew asked: "Were any similar slugs, slugs similar to this, found in the possession of the defendants?" The trial judge answered: "Mrs. Eschew, these—that evidence is not before the jury." The juror said: "Oh, I see." Another juror asked: "Were any excessive number of quarters found on the persons of these two young men?" The judge answered: "What developed as a result of the search is not before the jury." The questions came after the arguments and just before the court's instructions to the jury. At the conclusion of the instructions, counsel for the appellant asked the judge, because of his answers to the questions, to instruct the jury that its verdict "must be based upon the evidence that they heard here from the stand." The request was granted and the jury was instructed "and your verdict shall be based solely upon the evidence that you have heard from the witness stand." No other objection was made to these questions at the trial. Counsel now claims that the judge should have said

in answer to these questions: "There is no evidence in this case that the defendants had any similar slugs in their possession" and "There is no evidence in this case that an excessive number of quarters were found on the persons of these defendants." We think the trial judge was not bound to give the perfect answer as it is now conceived by counsel in a backward glance. We find this claim to be without merit.

The judgment of the District Court is affirmed.

EDWARDS, Circuit Judge (concurring).

This is a difficult case. The right of our citizens to be free from "unreasonable searches and seizures" is a part of those yearnings for freedom which gave birth to this country. Steadily through the decades our courts have sought to define the Fourth Amendment so as to ensure the freedoms it contemplated while leaving room for practical enforcement of public order by ordinary men acting within bounds of reason. (See Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)).

In this case I concur in affirmance without reaching the problem of the application of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In my view of the evidence, the original arrest was not constitutionally "unreasonable" under any present United States Supreme Court interpretation of the Fourth Amendment.

The facts in this appeal are recited in an agreed statement:

"The information charged that on January 3, 1963, the Defendants being over eighteen years of age did without lawful authority and with intent to defraud, utter and insert in a vending machine designed to receive lawful coins of the United States a device and metal similar in size and shape of lawful twenty-five cent coin of the United States to procure a thing of value, to-wit, genuine coins of the United States in violation of Federal Law.

"No specific location was named but the proof was that it was the Kwick-Kleen Laundry. Lloyd K. Lindsey took care of the laundry for his mother. The night in question Mr. Lindsey was driving past the laundry with a friend when he noticed two men standing next to the coin changer. He stopped his car and watched from across the street. He also observed a third man in the laundry. He asked his friend to summon the police, and he remained at his lookout post. His friend returned without the police, so he called them. On cross examination he said he did not see either defendant take any money from thé coin changer and that he did not see what either of the defendants may have put into the coin changer; that what created his suspicion was that the defendants were before the machine for some period of time. He further testified that just as the two men were leaving the police arrived and took them into custody. He further states that when he called the police originally, he said, 'I think someone is robbing my laundromat and they are right there now.'"

Subsequent to the arrests the coin changers were opened and 98 copper slugs the size of a quarter were found therein.

On this record there was probable cause for the arresting officers to believe that KRS 434.050(1) (a felony)[1] had been violated. A citizen had report-

---

1. "434.050 [1208] *Obtaining money, property or signature by false pretenses.* (1) Any person who, by any false pretense, statement or token, with intent to commit a fraud obtains from another money, property or other thing which may be the subject of larceny, or who obtains by any false pretense, statement or token, with like intention, the signature of another to a writing, the false making of which would be forgery, shall be confined in the penitentiary for not

ed a crime to the police and they had caught the perpetrators in full flight from the scene. There was certainly no opportunity for them to get a warrant.

The Fourth Amendment is much more concerned with what a police officer does in an arrest than it is with the state of his legal knowledge pertaining to the finer distinctions between felonies and misdemeanors.

No lawyer (much less a police officer) could have predicted with certainty at the moment of decision on the scene of the crime whether defendant would ultimately be charged with a felony under state law, or (as was done) with a high misdemeanor under federal law. And subsequent decision to charge under the latter statute does not invalidate the arrest if there was probable cause to believe the former statute was being violated.

But this case also poses the question: Assuming the arrest was legal at the instant it was made, was it rendered unconstitutional by the fact that the police told defendant that he was being arrested for "vagrancy investigation"?

As I read this record, this never was an "investigation arrest." This statement was an evasion probably designed to gain time to look up the charge which would be technically correct. But there is no federal constitutional requirement that the arresting officer inform the person arrested of the reason for the arrest. The Sixth Amendment reads in applicable part: *"In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation."* (Emphasis added.) And, of course, defendant was so informed well prior to trial.

Kentucky has a statute (KRS 431.025 (1)) which adopts the English common law rule [2] that an arrest is illegal unless the arresting officer tells the person arrested why he is being arrested. Under this rule and the Kentucky statute it is held that the police statement need not be made when the arrested party obviously knows the answer [3] or where it is dangerous to make it.

Here the defendant and his accomplice had just finished "slugging" a coin changer. The police were called by a citizen observer on the scene. Defendant was arrested in the nighttime in full flight from the laundromat where he had committed the crime. Such circumstances would serve to render unnecessary any formal statement of reason for arrest.

I join in affirmance of this conviction since I find no violation of defendant's federal constitutional rights and no prejudicial error.

---

less than one nor more than five years." Ky.Rev.Stat. ch. 434, § 434.050(1) (1960).

2. Christie v. Leachinsky (1947), A.C. 573, 587.x.

3. Dale v. Commonwealth, 186 Ky. 510, 514, 217 S.W. 363 (1920); Sizemore v. Commonwealth, 279 Ky. 190, 195–196, 130 S.W.2d 31 (1939).