
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
THOMAS J. HODGSON, DEFENDANT-APPELLANT.

Argued January 4, 1965—Decided February 26, 1965.

152

154

*Mr. Mark F. Hughes, Jr.* argued the cause for appellant.

*Mr. Brendan T. Byrne,* County Prosecutor of Essex County, argued the cause for respondent (*Mr. Peter Murray,* Assistant County Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

JACOBS, J. The Appellate Division affirmed the defendant's conviction of robbery (*N. J. S.* 2A:141–1) while armed (*N. J. S.* 2A:151–5). He appealed to this Court under *R. R.* 1:2–1(a).

On October 2, 1959 there was a holdup in Solomon Facher's tavern on Ferry Street, in Newark. At about 1:10 A. M., Facher and three patrons, John Meehan, Chris Eman and Vincent Czerwinski, were the only ones in the tavern when two men came in, drew their guns, and took the contents of the cash register and a metal box containing approximately $2,000 in cash and $3,000 in checks. As they backed out of the tavern they warned that if anyone stuck his head out he would have it "blown off." Facher and Meehan followed them out, were fired on, and saw them ride off in a car.

At the trial, Facher, Meehan and Czerwinski testified that the defendant Thomas J. Hodgson was one of the two holdup men. They had identified him in a police lineup several days after the event and their identification testimony at the trial was clear and unequivocal. In addition, the State produced testimony by Jon Catenacci who, after having given a statement that he and the defendant were the holdup men, then gave some testimony to the contrary, and finally testified that he and the defendant, along with a third man, Robert R. Ramberger who was the driver of the getaway car, had perpetrated the crime. Two guns introduced by the State in evidence were identified by Catenacci as the guns used by him and the defendant in the course of their holdup. Ramberger

also testified, first denying the crime but ultimately supporting Catenacci's final testimony that Ramberger was in the getaway car while he and the defendant were committing the holdup in the tavern. The State introduced a signed statement by the defendant admitting and describing his participation in the crime. The trial judge found this statement to have been a voluntary one and then submitted it to the jury for consideration along with the other evidence in the case. The defendant testified that the statement was not given voluntarily, that he was not guilty, and that he was at home at the time of the crime. His mother and a friend of hers gave testimony in support of his assertion that he was at home. The jury found the defendant guilty as charged and he was sentenced to a prison term of 10–12 years for the robbery (*N. J. S.* 2A:141–1) and a consecutive term of 2–3 years because the robbery was committed while he was armed (*N. J. S.* 2A:151–5).

The defendant contends his arrest was illegal and he was not promptly brought before a magistrate, and that, as a result, the identification testimony by the various witnesses, along with his confession and other evidence, should have been suppressed. This contention was not raised at the trial; indeed at no point during the trial was there any assertion that his arrest was illegal or that his appearance before a magistrate was delayed unduly. The testimony disclosed that the victims of the robbery had described the holdup men to the police, that Catenacci was placed under arrest on October 5, 1959 and that on October 6th at 1:30 A. M. the defendant was arrested at his home. He was immediately taken to East Orange Police Headquarters, at 2:00 A. M. he was taken to Newark Police Headquarters, and he was then transferred to the First Precinct in Newark where he slept and ate. After breakfast on the morning of October 6th, he was returned to Newark Police Headquarters, was placed in a police lineup, and was identified by Facher, Meehan and Czerwinski as one of the holdup men. Later during the same day he was questioned and signed a confession. On October 8th he was

brought before a local magistrate for preliminary examination. See *R. R.* 3:2–3.

■■ On the record before us it cannot be said that the arrest of the defendant was illegal. That the officers, at the time of the arrest, told the defendant that he was being arrested "on suspicion," did not indicate that they lacked probable cause for believing that the defendant was a participant in the crime. See *State v. Burnett,* 42 *N. J.* 377, 386–388 (1964); *Ralph v. Pepersack,* 335 *F. 2d* 128, 132–135 (4 *Cir.* 1964). They had descriptions of the holdup men, they had already picked up Catenacci who was a friend of the defendant and was on probation following his conviction of breaking and entering, and they then proceeded to arrest the defendant. The Court of Appeals of Maryland recently expressed the view that an arrest under comparable circumstances was legal. See *Wilkins v. State, Md.,* 205 *A. 2d* 593 (*Ct. App.* 1964); *cf. Ralph v. Pepersack, supra,* 335 *F. 2d,* at *pp.* 132–133; but *cf. Beck v. State of Ohio,* 379 *U. S.* 89, 85 *S. Ct.* 223, 13 *L. Ed. 2d* 142 (1964). In any event, even if the defendant's original arrest was illegal, it would not necessarily follow that the evidence of his identification and the other evidence now complained about would be inadmissible. See *State v. Jackson,* 43 *N. J.* 148, 168–170 (1964).

In *Jackson* the defendant contended that his arrest was illegal and that therefore the confession obtained from him after his arrest was inadmissible *per se.* He relied upon *Wong Sun v. United States,* 371 *U. S.* 471, 83 *S. Ct.* 407, 9 *L. Ed. 2d* 441 (1963), where the Supreme Court dealt with a simultaneous confession which was part and parcel of an unlawful entry and unauthorized arrest. Many state and lower federal court decisions since *Wong Sun* have rejected the notion that it declared all evidence obtained after illegal arrest to be inadmissible *per se;* some of them may be found cited in our opinion in *Jackson* (43 *N. J.,* at *p.* 169); see also *United States v. McGavic,* 337 *F. 2d* 317 (6 *Cir.* 1964), petition for *cert.* filed 33 *U. S. L. Week* 3254 (Jan. 26, 1965) (No. 823), and *Rogers v. United States,* 330 *F. 2d* 535 (5 *Cir.* 1964).

In *McGavic,* the court found that statements made 2½ hours after the illegal arrest were not contaminated (337 *F. 2d,* at *pp.* 318–319) and in *Rogers,* the court found that a statement made 3 hours after the arrest was not so bound up with it as to become tainted within *Wong Sun.* 330 *F. 2d,* at *pp.* 540–542.

*Wong Sun* did not embrace the position of the defendant here that any evidence which would not have been obtained "but for" the illegal arrest is to be excluded (371 *U. S.,* at *p.* 488, 83 *S. Ct.,* at *p.* 417, 9 *L. Ed. 2d,* at *p.* 455). And we are satisfied under the facts before us that the link between any illegality in the arrest and the later evidence was so attenuated that it cannot serve to taint the evidence. See ·*Smith v. United States,* 324 *F. 2d* 879 (*D. C. Cir.* 1963), *cert.* denied 377 *U. S.* 954, 84 *S. Ct.* 1632, 12 *L. Ed. 2d* 498 (1964). Upon the defendant's arrest he was not immediately subjected to any material interrogation. He slept, ate, and was then placed in a police lineup. He was identified in the lineup by the three victims and their identifications were repeated with firmness at the trial. The defendant's contention is that all of their identification testimony must be permanently suppressed because they "acquired knowledge of the robber's identity due to the lineup during the illegal detention"; a similar contention was summarily rejected in *Payne v. United States,* 111 *U. S. App. D. C.* 94, 294 *F. 2d* 723, 727 (*D. C. Cir.*), *cert.* denied 368 *U. S.* 883, 82 *S. Ct.* 131, 7 *L. Ed. 2d* 83 (1961), with the remark that such a result would be "unthinkable." The delay in bringing the defendant before a local magistrate for preliminary examination did not, under the prevailing New Jersey doctrine, dictate exclusion of the evidence obtained while he was in custody. Although the defendant urges that we abandon our doctrine in favor of the *McNabb-Mallory* rule ([*McNabb v. United States*] 318 *U. S.* 332, 63 *S. Ct.* 608, 87 *L. Ed.* 819 (1943); [*Mallory v. United States*] 354 *U. S.* 449, 77 *S. Ct.* 1356, 1 *L. Ed. 2d* 1479 (1957)), we recently declined to do so in *Jackson* (43 *N. J.,* at *pp.* 167–168), and even more recently in *State v. Johnson,*

44 *N. J.* 23 (1965). Nothing has been presented which would call for a departure at this particular time from the holdings in those cases.

The defendant attacks the trial court's finding that the statement given by him to the police was a voluntary one. The State's evidence was that the defendant was interrogated very briefly by other officers on October 6th and that, when Detective King arrived after 4:00 P. M. he, in the presence of Detective Lissenden, questioned the defendant and asked him whether he would make a statement. When the defendant said he would, questions were submitted which, together with the defendant's answers, were typed by Detective King. The resulting statement was read and signed by the defendant and was notarized. Detective King testified that no promise or threat of any kind nor physical force of any kind was directed towards the defendant to induce him to sign the statement. He denied that the defendant had ever requested of him that he be permitted to talk with his mother or consult with an attorney. Detective Lissenden testified that he was present while Detective King questioned the defendant. He stated that it took about an hour or an hour and one-half, that he saw no force directed toward the defendant, and that the defendant's physical condition was very good although "his face was red from crying." Shortly after the defendant had given his statement, he was visited by his mother who saw him "at the cellblock." Detective Coppola testified that he was present during the mother's visit and that he saw no marks of any kind on the defendant's face or body.

The defendant testified that although he was not subjected to any physical force during the actual taking of the statement, he had been beaten during questioning earlier in the day by both Detectives King and Lissenden. The detectives specifically denied such earlier alleged interrogation and conduct; they testified that they were at the Essex County Court House until 4:00 P. M. and did not arrive at Newark Police Headquarters until shortly thereafter. The defendant testified that the beatings occurred between 2:30 P. M. and the taking

of the statement and that he had been subjected to almost a hundred heavy blows by the detectives. He acknowledged that he voiced no complaint before the magistrate and sought no medical attention during his confinement in the Essex County jail. His mother testified that, when she saw him at about 7:00 P. M. on October 6th, his face was swollen and his eyes and face were red, and that when she saw him two days later he showed her bruise marks on his stomach. Ramberger testified that he knew the defendant had been beaten and had seen welts on his body.

In reaching his ultimate finding that the defendant's statement was given voluntarily, the trial judge did not believe the defendant's testimony as to his interrogations and beatings. He remarked that he "was impressed by the testimony offered by the detectives in refuting the testimony of the co-conspirators and the defendant himself." And he stated that he did not credit the defendant's story that he had received close to a hundred heavy blows but had nonetheless failed to say anything about the matter either before the magistrate or while at the county jail, an institution which is not under the control of the police and is equipped with its own medical and hospital facilities. See *State v. LaPierre*, 39 *N. J.* 156, 169, *cert.* denied *Bisignano v. New Jersey*, 374 *U. S.* 852, 83 *S. Ct.* 1920, 10 *L. Ed. 2d* 1073 (1963). The Appellate Division, speaking through Judge Labrecque, recognized that under *State v. Smith*, 32 *N. J.* 501 (1960), *cert.* denied 364 *U. S.* 936, 81 *S. Ct.* 383, 5 *L. Ed. 2d* 367 (1961), it was obliged to review and weigh the evidence bearing on the voluntariness and make its own independent determination, "giving full regard, of course, to the opportunity of the trial court to judge of the credibility of the witnesses." 32 *N. J.*, at *p.* 549. The Appellate Division did review and weigh the evidence; it pointed out that "in view of the sharp contradiction between the testimony of the State and that of the defendant, and absence of disinterested corroborative evidence, the issue of credibility became of paramount importance"; and giving due regard to the trial court's opportu-

nity to judge credibility, it found no error in the admission of the defendant's confession. We have also examined the evidence and find no reason for differing with the concordant determinations of the trial court and the Appellate Division. Cf. State v. Smith, supra, 32 N. J., at p. 550.

The defendant makes several subordinate attacks on the manner in which the trial court dealt with the issue of voluntariness. Thus he complains that, in passing on credibility, the trial court referred to the fact that the defendant failed to make any mention of the alleged beatings either before the magistrate or while at the county jail. The judge was expressing the thought that, if the defendant had actually received the extensive beatings he described, he would normally have spoken up and sought medical attention at first opportunity when not in custody of the Newark police. Surely this expression did not impair any of the defendant's constitutional rights. See State v. LaPierre, supra, 39 N. J., at p. 169. Nor did the trial judge's remark, about the defendant's reliance upon his own testimony and that of his two associates on the issue of voluntariness, place the burden of proof on the defendant as he now contends. This point was dealt with in the Appellate Division's opinion, and, as there pointed out, the strained meaning advanced by the defendant is not supported by the context. In the language of Judge Labrecque, "examination of the court's full findings, which cover 18 pages of the transcript, fails to reveal any departure from the rule that the State was charged with the burden of establishing the voluntariness of the confession." See State v. Tassiello, 39 N. J. 282, 291 (1963); State v. Fauntleroy, 36 N. J. 379, 395 (1962); State v. Smith, supra, 32 N. J., at pp. 559–560. We find no merit in the defendant's contention that the trial judge failed to consider all of the pertinent factors in reaching his determination of voluntariness. Although there is no rule of court requiring that the judge detail his findings, it is nonetheless desirable that he do so. See State v. LaPierre, supra, 39 N. J., at pp. 165–166. Here the trial judge's findings were in sufficient detail in view of the issue actually con-

troverted before him. It may be assumed that he gave fair consideration to the entire record and his failure to discuss all of the circumstances in his findings does not indicate otherwise.

Although no objection to the trial judge's charge to the jury was made during the trial, the defendant now complains about the charge's treatment of his statement or confession. The trial in this case was concluded on January 26, 1960; at that time the prevailing practice in our State was to have the trial judge pass on the voluntariness of a confession and if he found it to have been given voluntarily, he would then submit the issue of its credibility to the jury.[1] This practice conformed to the constitutional requirements later set forth in *Jackson v. Denno*, 378 *U. S.* 368, 84 *S. Ct.* 1774, 12 *L. Ed.* 2d 908 (1964). See *State v. Smith*, 43 *N. J.* 67, 76 (1964), *cert.* denied 85 *S. Ct.* 731 (1965).

On May 23, 1960 we announced a prospective alteration in our practice. See *State v. Smith, supra*, 32 *N. J.*, at *pp.* 557–560; see also *State v. Smith, supra*, 43 *N. J.*, at *pp.* 75–76. Under the altered practice, the trial court still passes on the issue of voluntariness, thus satisfying *Jackson v. Denno, supra*, but if it finds voluntariness it then submits to the jury not only the matter of credibility but also the matter of voluntariness, without, however, informing the jury as

---

[1] In the case before us, the trial judge's charge was more favorable to the defendant than required by the then prevailing practice. After instructing the jury that the credibility and weight of the confession were matters entirely for its determination, he charged as follows:

"In determining the value and weight the jury is not precluded from considering the evidence touching the voluntary character of the confession or the involuntary character of it; that is, as to it being induced by any kind of threats or violence.

On the contrary, the jury is under a duty to consider all of the evidence in the case, including that touching the voluntary or involuntary character of the confession and the occurrences and circumstances under which it is testified it was given. If you believe that the confession was the product of threats or violence and that it was not given voluntarily by the defendant, then you are under a duty to completely disregard the confession."

See *State v. Smith, supra*, 32 *N. J.*, at *pp.* 546–547.

to its finding on that issue. Here the defendant's complaint is that the trial judge made a statement in which he told the jury of his finding of voluntariness. The Appellate Division, after stressing that there had been no objection to this statement or to the charge, and that the ruling in *Smith, supra* (32 *N. J.,* at *pp.* 557–560), was prospective, had this to say: "In view of the thorough instructions given the jury as to the burden of proof resting upon the State, as to its exclusive duty to determine the credibility and weight to be attributed to the confession, *and* as to its obligation to completely disregard the confession unless it determined that it had been voluntarily given, we hold that the statement made did not constitute plain error requiring reversal."

We find no basis for disturbing this determination by the Appellate Division, nor do we find any merit in the defendant's contention that the trial judge's charge as to the confession "was skimpy at best" and failed to deal properly with the State's burden of proof. The charge explicitly instructed the jury that the defendant was presumed to be innocent, that this presumption remained with him throughout the case, that he was entitled to acquittal unless the crime and all of its elements were established beyond reasonable doubt, that he could not be convicted unless proved guilty beyond a reasonable doubt, and that "the burden of proving the guilt of the defendant beyond a reasonable doubt rests upon the State throughout the entire case and never shifts." In the light of the foregoing and the then prevailing practice, the jury could not have been misled and undoubtedly understood the true nature of its responsibilities with respect to all the evidence in the case including the defendant's statement.

 The defendant contends that he requested counsel and an opportunity to talk with his mother and that under *Escobedo v. State of Illinois,* 378 *U. S* .478, 84 *S. Ct.* 1758, 12 *L. Ed.* 2d 977 (1964), his statement was inadmissible. Neither this nor any comparable contention was raised in the trial court or in the Appellate Division. Although the defendant testified that he told Detective King that he wanted to make

his statement "in front of a lawyer" and that he wanted to call his "mother up and ask her for advice," this was denied by the detective. In view of the trial judge's overall remarks in the record, there is no doubt that he believed the detective's denial and disbelieved the defendant and no purpose would be served by seeking a further expression from the trial judge on this score. The matter is strictly one of credibility and there is no reason for our now rejecting the testimony credited by the trial judge before whom it was given. In several recent cases this Court indicated that, absent further elucidation by the Supreme Court, it will not consider *Escobedo* applicable in circumstances such as those at hand; nothing has thus far come down or has been presented in this proceeding to call for reconsideration at this time of the approach in those cases. See *State v. Vigliano,* 43 *N. J.* 44, 49–52 (1964) ; *State v. Smith, supra,* 43 *N. J.,* at *pp.* 83–84. Compare *Swartz v. State, Md.,* 205 *A. 2d* 803, 804 (*Ct. App.* 1965), and *People v. Hartgraves,* 31 *Ill. 2d* 375, 202 *N. E. 2d* 33, 35 (*Sup. Ct.* 1964), petition for *cert.* filed 33 *U. S. L. Week* 3275 (Feb. 16, 1965) (No. 894), with *People v. Dorado, Cal.,* 40 *Cal. Rptr.* 264, 394 *P. 2d* 952 (*Sup. Ct.* 1964), reaffirmed on rehearing, *Cal.,* 42 *Cal. Rptr.* 169, 398 *P. 2d* 361 (*Sup. Ct.* 1965).

 When the State called Catenacci and Ramberger as witnesses, the trial court elicited the fact that they had pleaded guilty to the indictment which charged them, along with the defendant, with having committed the armed robbery. Counsel for the defendant did not object, made no motion to strike and interrogated the witnesses with respect to their pleas and previous convictions. In summation, he stressed the fact that the witnesses had not yet been sentenced on their pleas and had a definite interest in the case since they presumably expected leniency because of their testimony. The Appellate Division, after pointing out that either party may on direct examination show prior convictions affecting the credibility of its witnesses (*State v. Holley,* 34 *N. J.* 9, 13, *cert.* denied 368 *U. S.* 854, 82 *S. Ct.* 89, 7 *L. Ed. 2d* 51

(1961)), and that the defendant here had not objected to the State's introduction of the testimony as to the pleas but "chose to gamble upon its effect," held that there was no plain error. We agree and note that, in any event, the reference to the pleas could not have prejudiced the defendant in view of the fact that both Catenacci and Ramberger ultimately testified fully in support of the State's charge that they and the defendant had perpetrated the armed robbery on October 2nd. The reference to their pleas could hardly have had any effect on the jury adverse to the defendant beyond their admittedly evidential descriptions of the defendant's paritcipation with them in the crime. See *R. R.* 1:5–1(a); *State v. Picciotti,* 12 *N. J.* 205, 211 (1953).

The defendant's final contention is that his sentence was excessively harsh and was based on improper standards. This contention lacks merit. Before he sentenced the defendant, the trial judge undoubtedly gave consideration to the presentence report and defense counsel's argument. He mentioned the fact that, although the defendant's activity as a juvenile was not to be considered as a record, it did indicate that the defendant had been "in and out of trouble consistently since 1954, since he was 11 years old. 1954, 1955, 1956, 1957, 1958 and of course 1959. He has been in constant trouble." And he expressed the thought, gathered from the entire record of the present proceeding, that it was the defendant's influence on the other participants in the armed robbery that led them originally to commit perjury before they ultimately testified as to the details of the holdup on October 2nd. We find no impropriety in the reference to all of the foregoing which bore on the defendant's behavior both early and recent. See *State v. Ivan,* 33 *N. J.* 197 (1960); *State v. Jenkins,* 32 *N. J.* 109, 115 (1960); *cf. State v. Johnson,* 67 *N. J. Super.* 414, 432–434 (*App. Div.* 1961). The sentence imposed was well within the statutory limits and was not an improper exercise of discretion. The additional term of 2 to 3 years because the robbery was committed while armed was in accord with the clear statutory purpose

(*N. J. S.* 2A:151–5) and did not constitute offensive multiple punishment for the same violation. See *State v. Buffa,* 65 *N. J. Super.* 421, 427 (*App. Div.* 1961) ; *State v. Bennett,* 75 *N. J. Super.* 207, 212 (*App. Div.* 1962). The cases of *Milanovich v. United States,* 365 *U. S.* 531, 81 *S. Ct.* 728, 5 *L. Ed.* 2d 773 (1961), and *Prince v. United States,* 352 *U. S.* 322, 77 *S. Ct.* 403, 1 *L. Ed.* 2d 370 (1957), relied upon by the defendant, involved questions of federal statutory construction and did not touch on the meaning or validity of *N. J. S.* 2A:151–5.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.