THE STATE OF OHIO, APPELLEE, *v.* THOMPSON, APPELLANT.

[Cite as State v. Thompson, 1 Ohio App. 2d 533.]

(No. 26968—Decided March 25, 1965.)

*Mr. Edward V. Cain,* for appellee.
*Mr. James R. Willis,* for appellant.

KOVACHY, P. J. This is an appeal on questions of law from a judgment entered in the Cleveland Municipal Court.

Defendant, William Thompson, was charged with illegally possessing certain clearing house bet slips in violation of Section 2915.111, Revised Code. The cause was tried to the court. He was found guilty and sentenced.

Prior to trial the defendant filed a written motion to suppress evidence, in which he claimed, *inter alia,* that he was illegally arrested and searched by members of the Cleveland Po-

lice Department; that they forcibly entered his automobile and "searched and wrongfully seized therefrom items of property which they intend to use as evidence in this case"; that the officers acted without a warrant and without having any reasonable grounds for believing that he had committed a criminal act; that the search and seizure violated the Fourth Amendment of the Constitution of the United States; and that the use of any property so seized as evidence would infringe upon the privilege against self-incrimination as guaranteed by the Fifth Amendment of the Constitution of the United States.

The evidence in support of his motion to suppress evidence, in the main, was as follows:

A police sergeant assigned to the Bureau of Special Investigation and charged with the responsibility of investigating organized rackets was in a restaurant known as Klonaris Light Lunch located at 2512 Canal Road, Cleveland, Ohio, when he saw the defendant enter and sit down at the counter and heard him order a piece of pie and a glass of milk. The sergeant walked over to the defendant to question him and was informed by the defendant that he was stopping at the restaurant to see a man. During further conversation, the substance of which was not disclosed, the sergeant, although admitting that he did not see defendant violate any of the laws of the state of Ohio or ordinances of the city of Cleveland and that he did not have a warrant for his arrest, placed him under arrest. A fellow officer, also assigned to the Bureau of Special Investigation, then joined the pair and questioned the defendant as to activities in the clearing house business, without result. Defendant was then taken to the basement and searched. The officers had no search warrant. Nothing of a contraband nature was found. Upon further questioning, however, defendant told them that he was a pickup man in the numbers racket, that "the business was in the trunk of his car" and that he lacked a key to the trunk. One of the officers then testified that the defendant consented to have a key made and, upon driving some miles to a Chevrolet agency, had such a key made, opened the trunk and found two brown paper bags containing a large quantity of clearing house bet slips and some $6,700 in cash.

On further questioning, the officer testified that defendant was arrested for "carrying on a scheme of chance," on the basis

of "prior knowledge and our observations made prior to this date."

The defendant, on the stand, denied making any admissions to the officers of any policy activities, or of permitting the officers to obtain a key for the trunk to open it, but that he volunteered at first to open the trunk with a screw driver because he did not know "there was anything in there," but was unable to open it.

The motion to suppress evidence was overruled by the trial court. The state immediately presented its evidence in support of the charge against the defendant. One witness testified briefly in the trial on the merits, this witness being one of the police officers who had previously testified for the defendant on his motion to suppress.

It seems to us that the hearing on the motion to suppress, by being so closely associated with the trial on the merits, was deemed by the court as well as the parties to be a part of the latter.

The evidence presented upon the trial on "the merits" was substantially as follows:

1. For two weeks prior to the date of the arrest, police were on detail to watch the Klonaris Restaurant and saw the defendant come to the restaurant on three occasions;

2. they "searched the place and found clearing house slips" and "stayed there and waited for these people to arrive that were bringing the bet slips to this place";

3. the defendant was one of "six people" they arrested;

4. when the officer first saw the defendant, the defendant was sitting at the counter eating pie and drinking milk; and

5. upon conversation with him as to his identity, he was placed under arrest.

Counsel for defendant stipulated that the slips found in the trunk of defendant's automobile "are clearing house wager slips."

The question before us is whether, under the evidence disclosed in the record, the police officers had reasonable grounds to believe that a felony had been committed and whether they had probable cause to believe that the defendant had committed the same or was in the process of committing the same, in order to justify his arrest without a warrant, and whether in so doing

the search of his person and automobile was reasonably incidental to such arrest.

Paragraph one of Section 2935.03, Revised Code, styled "Officer may arrest on view," reads as follows:

"A sheriff, deputy sheriff, marshal, deputy marshal, watchman, or police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained."

Section 2935.04, Revised Code, styled "When any person may arrest," reads as follows:

"When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."

It is plain from the record in this case that the arrest of the defendant was not based on the officer observing any violation of law, for the officer admitted that he did not see the defendant violate any law of Ohio or ordinance of Cleveland. *Ergo,* the arrest could only be justified if the police officers (1) had reasonable ground to believe that a felony had been or was being committed, and (2) had reasonable or probable cause to believe the defendant was guilty of the offense.

Section 2915.111, Revised Code, the crime of violating which the defendant was found guilty, reads as follows:

"No person shall own, possess, have on or about his person, have in his custody, or have under his control a ticket, order, or device for or representing a number of shares or an interest in a scheme of chance known as 'policy,' 'numbers game,' 'clearing house,' or by words or terms of similar import, located in or to be drawn, paid, or carried on within or without this state.

"Whoever violates this section shall be fined not more than five hundred dollars and imprisoned not more than six months for a first offense; for each subsequent offense, such person shall be fined not less than five hundred nor more than one thousand dollars and imprisoned not less than one nor more than three years."

It is patent from the penalty provided in that section that a first offender is guilty only of a misdemeanor and that a de-

fendant can only be found guilty of a felony on a subsequent offense. The record is devoid of any evidence whatever that the defendant had ever been found guilty of violating that section of the Revised Code, and it necessarily follows that, since the defendant has no such record, the officers could not have had any reasonable grounds to believe, so far as this crime is concerned, that the defendant had committed or was in the perpetration of a felony.

Officer Wandra, who was the testifying officer in the trial on the merits, testified that the defendant was arrested for "carrying on a scheme of chance."

Section 2915.13, Revised Code, styled "Promoting a 'numbers game,'" provides:

"No person shall establish, open, set on foot, carry on, promote, make, draw, or act as 'backer' or 'vendor' for or on account of a scheme of chance known as 'policy,' 'numbers game,' 'clearing house,' or by words or terms of similar import, located in or to be drawn, paid, or carried on within or without this state, or by any of such means sell or expose for sale anything of value.

"Whoever violates this section shall be fined not less than five hundred nor more than one thousand dollars and imprisoned not less than one nor more than ten years."

The violation of that section is a felony under its penalty provision.

The bill of exceptions containing the evidence at the hearing on the motion to suppress as well as the trial on the merits contains no evidence whatever to show that prior to arrest the defendant was engaged in any activity proscribed by Section 2915.13. Officer Wandra, at the hearing on the motion to suppress, did present the following testimony bearing on this question:

"Q. And what was he under arrest for? A. Carrying on a scheme of chance.

"Q. And you had proof of that? A. Prior knowledge and our observation made prior to date."

As to what the prior knowledge was or the observations made was not divulged, and such statement standing alone is meaningless and has no probative value. It is merely the conclusion of the officer and embraces no facts on which judgment

could be passed by the trial court. Officer Wandra's testimony in the hearing on the merits, that he saw the defendant on three occasions in this *public restaurant* over a two-week period, was without further explanation or description and was likewise meaningless and of no probative value. It is true that the officer testified about "searching the place" and of finding "clearing house slips" and waiting for "people to arrive with bet slips," but the record is totally silent as to when they searched this place, where they found the so-called "clearing house slips," how they knew they were "clearing house slips," whether they had a search warrant, where the "clearing house slips" were at the time of the trial, why they did not have them in court, and what facts, if any, were at their command for "people to arrive with bet slips." Without such clarification the evidence is so vague, indefinite and inconclusive as to be nebulous in quality and of no value in passing on the question of probable cause for the arrest of this defendant without a warrant.

Furthermore, there was no evidence whatsoever which connected the defendant with the "clearing house slips" found on the premises of this public restaurant or which indicated that he was one of the "people" they were waiting for to arrive with "bet slips."

It is stated by the Supreme Court of the United States in *Beck* v. *Ohio,* 379 U. S. 89, 13 L. Ed. 2d 142, that:

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. *Carroll* v. *United States,* 267 U. S. 132, 162. If the court is not informed of the facts upon which the arresting officers acted, it cannot properly discharge that function. * * *"

6 Corpus Juris Secundum 596, Arrest, Section 6, in part, provides:

"Where an officer, in good faith, believes that a person is guilty of a felony, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise, he had such probable cause of his belief as will justify him in arresting without a warrant. * * * An arrest without a warrant, made on a mere suspicion

or belief or guess, unsupported by facts, circumstances, or credible information pointing to the guilt of the person arrested, cannot be justified as having been made on probable cause even though it subsequently appears that the person arrested is guilty of an offense.''

In the case of *Brinegar* v. *United States,* 338 U. S. 160, the Supreme Court of the United States stated the following in paragraph four of the syllabus:

''Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief by a man of reasonable caution that a crime is being committed.''

It is the function of the trial court to determine from all the facts and circumstances presented whether the facts in the possession of a police officer are sufficient to cause a reasonable and prudent man to believe that a felony has been committed and whether the defendant participated in its commission, and only where the trial court can so find from substantial and credible evidence is probable cause present to justify an arrest without a warrant.

It is our conclusion that the record fails to show evidence of a substantial, credible or probative nature to warrant the finding that the police officers had reasonable grounds or probable cause to believe that the defendant had committed or was in the act of committing a felony, and, accordingly, we hold that the trial court was in error in determining that probable cause existed for the arrest of this defendant.

It is stated in *United States* v. *Di Re,* 332 U. S. 581, in paragraph seven of the syllabus, as follows:

''A search is not made legal by what it turns up; in law it is good or bad when it starts and does not change character from its success.''

It is also stated in *Bynum* v. *United States,* 262 F. 2d 465, in the first paragraph of the headnotes:

''An article taken from the person of an individual on the occasion of an illegal arrest is not admissible in evidence against him in a criminal prosecution, although it is relevant and entirely trustworthy as an item of proof.''

The search of a person and his automobile without a search

warrant is reasonable and lawful when incidental to a lawful arrest. Since it is our determination that the arrest of the defendant was unlawful, it necessarily follows that the search of defendant's automobile likewise was unlawful and that the evidence seized was inadmissible as evidence in the trial of this case.

Police officers also testified that the defendant, on several occasions, admitted his active participation in the scheme of chance known as "clearing house." However, since the arrest was unlawful, all statements as well as the physical evidence seized are the fruits of such unlawful action, and, as such, under the ruling of the Supreme Court of the United States, are inadmissible as evidence.

In *Bynum* v. *United States*, 262 F. 2d 465, it is stated in the second paragraph of the headnotes:

"If the police have obtained a statement from an accused person during his illegal detention, no showing that the statement has been obtained without coercion and accurately recorded can make it admissible, although it may seem to be a trustworthy and patently relevant voluntary statement."

In *Wong Sun* v. *United States*, 371 U. S. 471, it is stated in paragraph two of the syllabus as follows:

"On the record in this case, the statements made by Toy in his bedroom at the time of his unlawful arrest were the fruits of the agents' unlawful action, and they should have been excluded from evidence. * * *"

The statements allegedly made by the defendant, accordingly, should have been excluded from the evidence and not considered by the trial court.

Inasmuch as the criminal charge that was brought against the defendant was based on the bet slips found in his automobile, and since the claimed admissions of guilt by the defendant cannot be used against him under the circumstances in which they were obtained, the record contains no evidence to sustain the judgment entered by the trial court. Accordingly, the judgment is reversed and final judgment is rendered for the defendant, discharging him.

*Judgment reversed.*

Artl and Corrigan, JJ., concur.