Albert **LYONS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 3994.

District of Columbia Court of Appeals.

Argued June 29, 1966.

Decided July 25, 1966.

Charles R. Work % Georgetown Law School, Washington, D. C. (appointed by this court) for appellant.

Dean W. Determan, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., and Frank Q. Nebeker and Geoffrey M. Alprin, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge.

This appeal is from a conviction under our Narcotic Vagrancy statute.[1] At trial and here appellant has challenged the legality of his arrest and the search which followed.

The arresting officer, Gibson, testified that he and two other officers in plain clothes were in a private automobile parked in front of a building on Fourth Street, Southeast watching for daytime housebreakings in that area. At about 12:30 p. m. Officer Gibson saw an automobile drive up and stop near the building. The officer recognized one of the occupants of the car to be a man named Spriggs, known to the officer as a thief and a convicted narcotic user. There were two other men in the car Chandler, the driver, and Lyons, the appellant here. Neither of these men was known to the officer. Spriggs alighted from the car, "looked around in a suspicious manner" and went into the building. The car, operated by Chandler and occupied by appellant, then circled the block and parked on Fourth Street about 200 yards from the building. Spriggs came out of the building about ten minutes later, "looked up and down the street," and then walked to and entered the car. As the car was pulling away from the curb, the officers drove their car alongside, and when one of Gibson's partners identified himself as a police officer, Chandler stopped his car.

---

1. D.C.Code, 1961, 33–416a.

Officer Gibson got out of his car and as he walked toward the other car, he observed Spriggs place into his shoe a brown or tan envelope which he "suspected of being narcotics." Gibson placed Spriggs under arrest and removed a package from his shoe containing 96 capsules of white powder. Gibson then advised Chandler and Lyons that they also were under arrest. Sometime thereafter an examination of Lyons' arm disclosed needle marks and upon being questioned Lyons admitted he was a narcotic user.[2]

The questions of exactly when Spriggs' arrest occurred and the legality of his arrest have been argued; but we find no occasion for answering those questions. Assuming, but not deciding, that Spriggs was arrested after the officer had probable cause to make the arrest and that his arrest was a valid one, we still find no probable cause for the arrest of Lyons.

 There was no evidence that Lyons had any knowledge of the possession of the narcotics by Spriggs. Lyons' only connection with Spriggs was that they were both occupants of the same car. This may have given rise to a suspicion that Lyons was engaged with Spriggs in some illegal narcotic activity, but mere suspicion will not justify an arrest. The following language from the United States v. Di Re, 332 U.S. 581, 593, 68 S.Ct. 222, 228, 92 L.Ed. 210 (1948), is appropriate here.

"The argument that one who 'accompanies a criminal to a crime rendezvous' cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal."

2. The record does not make clear whether the examination and questioning of Lyons took place at the scene of arrest or at the station house, but it is clear that

Therefore, even if the arrest of Spriggs and the seizure of the narcotics from him were lawful, there was no probable cause for arresting Lyons as a narcotic vagrant. Although he was found in a vehicle in which illicit narcotic drugs were found, that was not sufficient under the statute to warrant his arrest. The other necessary element was that he be a narcotic drug user or had been convicted of a narcotic offense. At the time of the arrest the officer had no reasonable ground for belief that this second element existed. He found the needle marks and obtained Lyons' admission after making the arrest. These items of evidence were obtained as a result of an illegal detention of Lyons and were not admissible against him.[3]

Reversed with instructions to enter judgment of acquittal.

these events occurred after Lyons had been told he was under arrest.

3. Bynum v. United States, 104 U.S.App. D.C. 368, 262 F.2d 465 (1958).