STATE OF NORTH CAROLINA v. JAMES CURTIS MOORE, BOBBY RAY DAWSON, AND CARL PATRICK SPEIGHT

No. 8

(Filed 12 March 1969)

**1. Criminal Law § 106— nonsuit — corroboration of confession — proof of corpus delicti**

When the State offers evidence of the corpus delicti in addition to defendant's confession of guilt, defendant's motion to nonsuit is correctly denied.

**2. Arrest and Bail § 3— arrest without warrant**

An arrest without a warrant except as authorized by statute is illegal.

**3. Arrest and Bail § 3— arrest without warrant — misdemeanor**

An arrest without a warrant for misdemeanors not committed in the presence of the arresting officers is illegal. G.S. 15-41.

**4. Criminal Law § 75— illegal arrest — subsequent confession**

A confession obtained from a person in custody as a result of an illegal arrest is not *ipso facto* inadmissible, voluntariness remaining the test of admissibility, but the facts and circumstances surrounding the illegal arrest and the in-custody statement should be considered in determining whether the confession is voluntary and admissible.

**5. Criminal Law § 76— admissibility of confession — voir dire hearing**

When a purported confession of a defendant is offered into evidence and defendant objects, the trial judge, in the absence of the jury, should hear evidence of both the State and the defendant upon the question of the voluntariness of defendant's statements.

141

**6. Criminal Law § 76— admissibility of confession — voir dire hearing — necessity for findings of fact**

When there is conflicting evidence offered at a voir dire hearing to determine the admissibility of a confession, the trial judge must make findings of fact to show the bases of his ruling on the admissibility of the confession.

**7. Criminal Law § 76— admissibility of confession — voir dire hearing — failure of court to find facts**

Where the State and defendants offered conflicting evidence at the voir dire hearing to determine the admissibility of defendants' purported confessions, failure of the trial court to make findings of fact to support its conclusion that any confession made by either of the three defendants was made freely and voluntarily entitles each of the defendants to a new trial.

**8. Constitutional Law § 31— identity of informer**

A defendant is not necessarily entitled to elicit the name of an informer from the State's witnesses.

**9. Constitutional Law § 31— identity of informer**

The State's privilege against disclosure of an informant's identity must give way where the disclosure of the informant's identity or the contents of his communication is relevant or helpful to the defense of the accused or is essential to fair determination of a cause.

**10. Arrest and Bail § 8; Constitutional Law § 31— identity of informer — validity of arrest**

While defendants are entitled to question the police as to the reliability of an informer when the constitutional validity of defendants' arrests is challenged, defendants are not prejudiced by refusal of the trial judge to allow defense counsel to question police officers about the identity of an informer who gave the officers information which led to defendants' arrest where the illegality of the arrests has been established.

APPEAL by defendants from decision of the North Carolina Court of Appeals filed on 18 December 1968 and reported in 3 N.C. App. 286.

Defendants James Curtis Moore and Bobby Ray Dawson were each charged in five separate warrants with malicious damage to property, including the charge herein considered. Each of these defendants entered a plea of guilty in Recorder's Court of Wilson, N. C., and was sentenced to two years on each charge, to run consecutively. Each defendant noted an appeal to the Superior Court, and bond for each was set in the amount of $25,000.00.

Defendant Carl Patrick Speight was charged in three separate warrants with malicious damage to property, including the charge herein considered. These cases were also heard in the Wilson Re-

corder's Court and defendant, upon a plea of guilty, was sentenced to two years on each charge, to run consecutively. He noted an appeal to the Superior Court and bond was set in the amount of $25,000.00.

At the 24 June 1968 Criminal Term of the Superior Court of Wilson County before Parker (Joseph W.), J., each defendant was tried upon warrants charging malicious damage to property. The warrants charged that each defendant on or about the 6th day of April, 1968, "did unlawfully, wantonly and maliciously injure and destroy real property of the Bargin (sic) Grocery, owned and operated by B. J. Robbins, said real property being as follows: Breaking out window glasses, and or did aid and abet in the said charge."

Each defendant through counsel entered a plea of not guilty. At trial the State offered evidence which indicated the following: On Saturday night, 6 April 1968, certain stores, including Bargain Grocery, were damaged and looted. Certain members of the Wilson Police Department, including Detective John Ed Davis, investigated the damage to Bargain Grocery, and around 12:00 or 12:30 at night notified the owner, B. J. Robbins. Mr. Robbins found his store looted, the plate glass window smashed, merchandise burned and scattered throughout the store and considerable fire and water damage incurred. Mr. Robbins did not know who had looted his store.

While Detective Davis was testifying, he was asked questions concerning statements made by defendants, and upon objection, the jury was excused and a voir dire hearing held. On voir dire, Detective Davis testified that on Sunday, 7 April 1968, he received information from a certain person that each of the three defendants participated in breaking the windows of Bargain Grocery. Detective Davis did not reveal the name of the informer and made no statement concerning the informer's reliability.

The following Monday, 8 April 1968, Detective Davis and Detective Smith talked with defendant Moore at his apartment, which was some 200 feet from the Bargain Grocery. Detective Davis asked Moore to get into the police car and advised him that he was under arrest for malicious damage to property. Detective Davis further testified that, after giving Moore the *Miranda* warning in the car, Moore stated that he had participated in damaging and looting the store. Detectives Davis and Smith, later in the same day, arrested defendant Speight at the same set of apartments and advised him of his rights. The following day, 9 April 1968, after a night in jail, Speight made a statement implicating himself in the damage to

Bargain Grocery. Defendant Dawson was also arrested on 8 April 1968 by Detective Parks of the Wilson Police Department. On 9 April 1968, also following a night in jail, Dawson, after being advised of his rights, made a statement to Detective Davis implicating himself in the breaking of the glass at Bargain Grocery. Detective Davis testified that none of the inculpatory statements allegedly made by defendants were ever reduced to writing.

On voir dire each defendant gave testimony that conflicted with the testimony of the police. Each defendant denied making any incriminating statement concerning Bargain Grocery to the police officers. Moore testified that he walked out of the house as a group of boys broke out the windows at Parramore Oil Company about 200 feet away and that this was the only thing he had admitted to the police. Speight testified that he admitted he broke a window (not any particular window) due to a promise from the police to lower the amount of his bail. Dawson's testimony was in such conflict that he named both 8 April and 10 April, 1968, as being the first time he made any admission concerning breaking the windows. In a room over the courtroom, in response to Detective Davis' naming of three stores, Dawson stated that he was guilty, but Dawson testified that Bargain Grocery was not in the list and that he had admitted nothing concerning Bargain Grocery. Dawson stated that he pleaded guilty in the Recorder's Court because of a suggestion by the police that he would get a lighter sentence. It is noted, however, that defendants' evidence was not in conflict with the State's evidence concerning the circumstances surrounding the actual arrest.

Following the voir dire examination on the voluntariness of the inculpatory statements made by defendants, the Court found the statements to have been voluntarily made and admitted them into evidence before the jury. Officer Davis then testified, *inter alia,* as to defendants' confessions in presence of the jury.

Officer Smith of the Wilson Police Department testified that he had been acquainted personally with defendants Moore and Dawson for five or six years and that he saw defendants Moore and Dawson sometime between 11 and 2 o'clock on the night of 6 April 1968 running down the street with a crowd of eight to ten boys approximately a block from Bargain Grocery.

Each defendant testified that he had nothing to do with the damage to Bargain Grocery and offered evidence in the nature of an alibi.

All the evidence tended to show that each defendant was ar-

rested without a warrant for misdemeanors not committed in the presence of the arresting officers.

The jury returned a verdict of guilty as to each defendant and the Court sentenced each defendant to two years in prison. Each defendant appealed to the North Carolina Court of Appeals. That Court found no error. Defendants then appealed to this Court pursuant to N. C. Gen. Stat. § 7A-30.1, alleging violation of their constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 11, 15 and 17 of the North Carolina Constitution.

*Attorney General Morgan and Assistant Attorney General Harrell for the State.*

*Chambers, Stein, Ferguson and Lanning for defendants.*

BRANCH, J.

[1] Defendants assign as error the denial of their motions for nonsuit. When the State offers evidence of the corpus delicti in addition to defendant's confession of guilt, defendant's motion to nonsuit is correctly denied. *State v. Stinson,* 263 N.C. 283, 139 S.E. 2d 558. Here, defendants' confessions with the evidence *aliunde* as to the corpus delicti were sufficient to overrule their motions for nonsuit.

Defendants also assign as error the admission into evidence, over their objections, of the testimony of police officers concerning alleged inculpatory statements made by each of the defendants after their arrest without a warrant and made while each defendant was in custody.

[2] An arrest without warrant except as authorized by statute is illegal. *State v. Mobley,* 240 N.C. 476, 83 S.E. 2d 100.

N. C. Gen. Stat. § 15-41, entitled "When officer may arrest without warrant," in part provides:

"A peace officer may without warrant arrest a person:

(1) When the person to be arrested has committed a felony or misdemeanor in the presence of the officer or when the officer has reasonable ground to believe that the person to be arrested has committed a felony or misdemeanor in his presence;"

[3] Here, each defendant was charged with a misdemeanor and the record clearly discloses that the alleged misdemeanors did not occur in the presence of the arresting officers, and that the arrests

were made without warrants. Thus, the arrest of each defendant must be treated as illegal. We must therefore decide whether, under the circumstances of this case, the alleged inculpatory statements of each defendant must be excluded because of the prior illegal arrest.

**[4]**    In *McNabb v. United States,* 318 U.S. 332, 87 L. Ed. 819, 63 S. Ct. 608 (1943), and *Mallory v. United States,* 354 U.S. 449, 1 L. Ed. 2d 1497, 77 S. Ct. 1356 (1957), a rule dealing with cases of unlawful delay between arrest and arraignment before a United States Commissioner was formulated. This rule states that a confession made during such unlawful delay is held to be *ipso facto* inadmissible. *Mallory v. United States, supra; Upshaw v. United States,* 335 U.S. 410, 93 L. Ed. 100, 69 S. Ct. 170 (1948); *McNabb v. United States, supra.* However, the *McNabb-Mallory* rule is based on rule 5(a) of the Federal Rules of Criminal Procedure, and the U. S. Supreme Court has made it clear that it is a rule of evidence formulated through the exercise of the Court's supervisory authority over the administration of criminal justice in the federal courts and not a constitutional limitation binding upon the State courts. *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *Culombe v. Connecticut,* 367 U.S. 568, 6 L. Ed. 2d 1037, 81 S. Ct. 1860 (1961); *Brown v. Allen,* 344 U.S. 443, 97 L. Ed. 469, 73 S. Ct. 397 (1953); *Gallegos v. Nebraska,* 342 U.S. 55, 96 L. Ed. 86, 72 S. Ct. 141 (1951).

In *Weeks v. United States,* 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914), the U. S. Supreme Court held that in a federal prosecution the Fourth Amendment barred as "fruit of a poison tree" evidence secured through an illegal search and seizure. This rule was made applicable to the states by *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1960). Appellants rely heavily on the case of *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963) as extending the "poison fruit" doctrine to verbal statements following an illegal arrest.

In *Wong Sun v. United States, supra,* six or seven federal narcotics officers, acting on information secured from an informer and without procuring a search warrant or arrest warrant, went to the laundry where defendant Toy worked and lived. One of the officers rang the bell and told Toy that he was calling for laundry and dry cleaning. When Toy started to close the door, the officer identified himself as a federal narcotics agent. Toy slammed the door and ran. The officers broke the door open and followed him into the bedroom where his wife and child were sleeping. He was arrested and

handcuffed, and within a very short time he made an inculpatory statement. Toy's confession implicated defendant Wong Sun, who was arrested and later released on his own recognizance. Wong Sun made no inculpatory statement prior to his initial release. Several days later Wong Sun voluntarily returned to the police station and made an inculpatory statement. Excluding the Toy confession as being "fruit of official illegality" and admitting the Wong Sun confession on the basis that the connection between the prior illegal arrest and later confession had "become so attenuated as to dissipate the taint," the United States Supreme Court, *inter alia*, stated:

> "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from our holding in *Silverman v. United States,* 365 U.S. 505, 5 L. Ed. 2d 734, 81 S. Ct. 679, that the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects.' Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies. *McGinnis v. United States,* (CA1 N.H.), 227 F. 2d 598. Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion. See *Neuslein v. District of Columbia,* 73 App. D.C. 85, 115 F. 2d 690. Nor do the policies underlying the exclusionary rule invite any logical distinction between physical and verbal evidence. . . .

> "The Government argues that Toy's statements to the officers in his bedroom, although closely consequent upon the invasion which we hold unlawful, were nevertheless admissible because they resulted from 'an intervening independent act of free will.' This contention, however, takes insufficient account of the circumstances. Six or seven officers had broken the door and followed on Toy's heels into the bedroom where his wife and child were sleeping. He had been almost immediately handcuffed and arrested. Under such circumstances it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion.

> . . .

> ". . . We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. . . ."

We find no United States Supreme Court decision on this precise point since the decision in *Wong Sun;* however, the language used by the Supreme Court in *Wong Sun* has been interpreted by the state and lower federal appellate courts so as to produce a definite split of authority.

One line of authority holds that any confession made subsequent to an illegal arrest, regardless of its voluntariness, must be excluded.

In *State v. Mercurio,* 96 R.I. 464, 194 A. 2d 574 (1963), the defendants were arrested without warrants for violation of the gambling statutes, a misdemeanor. The police had information that defendants' automobile was being used in connection with a gambling operation, but while observing the car had no reason to believe that a misdemeanor was being committed in their presence. The Rhode Island Supreme Court stated: "[T]he arrests of defendants having been made without warrants or probable cause, we hold that the moneys, documents and statements taken and elicited from them at the time of their detention were inadmissible. . . ." The Court interpreted *Wong Sun* as saying that "all evidence seized and incriminating statements elicited from one whose arrest had not been made with probable cause were not admissible at his trial."

·   The District of Columbia Court of Appeals considered this question in the case of *Lyons v. United States,* 221 A. 2d 711 (1966). There, the defendant Lyons was arrested with no probable cause under the narcotics vagrancy statute. He was arrested while sitting in a car with a known narcotics user and thief, who had narcotics in his possession and who was also arrested. Police found needle marks on Lyons' arms and got his admission that he used narcotics. The Court stated: "These items of evidence (the needle marks and the admissions) were obtained as a result of an illegal detention of Lyons and were not admissible against him."

In *Gatlin v. United States,* 326 F. 2d 666 (D.C. Cir. 1963), the defendant was arrested for robbery without probable cause and without a warrant while walking down the street a mile and a half from the scene of the crime. After arriving at police headquarters, a few minutes after the illegal arrest, the defendant confessed. The Court in excluding the confession stated:

"Verbal evidence obtained from unlawful police action 'is no less the "fruit" of official illegality than the more common tangible fruits of the unwarranted intrusion.' *Wong Sun v. United States.* (Citations omitted) Accord, *Fahy v. Connecticut, supra* (375 US 85). The government's attempt to distinguish *Wong Sun* on the ground that Miller's confession was only an

attenuated fruit of his illegal arrest is not persuasive. In *Wong Sun* the illegal arrest alone made the post-arrest admissions while still in custody poisonous fruit."

In accord with this line of authority are: *Commonwealth v. Young,* 349 Mass. 175, 206 N.E. 2d 694 (1965) (dictum); *State v. Thompson,* 1 Ohio App. 2d 533, 206 N.E. 2d 5 (1965); *State v. Dufour,* 99 R.I. 120, 206 A. 2d 82 (1965).

The other line of authority holds that *Wong Sun* does not require *ipso facto* the exclusion of a confession made following an illegal arrest. However, there is some disagreement as to the exact requirements of *Wong Sun.*

The Connecticut Court in *State v. Traub,* 151 Conn. 246, 196 A. 2d 755 (1963), cert. den. 377 U.S. 960, 12 L. Ed. 2d 503, 84 S. Ct. 1637, interpreted *Wong Sun* as adding a causation test to the established voluntariness test. The Court, in ruling that a confession made by Traub following an illegal arrest was admissible, stated:

> "In other words, where, as we are assuming for the purposes of this opinion, a detention is illegal, a confession made during such a detention cannot be admitted unless and until the State proves that (1) the confession was truly voluntary, and (2) it was not caused or brought about by, or the fruit of, the illegal detention. It is the second, or causation factor, which *Wong Sun* added to the voluntariness requirement. If the detention is illegal, then it must be eliminated as an operative factor. If the detention is legal, the causative factor is immaterial if the first requirement of voluntariness is satisfied."

Our research reveals that the Connecticut Court was not departing from their own precedent in inserting the causation element, since in the case of *State v. Zukauskas,* 132 Conn. 450, 45 A. 2d 289 (1945) the Court held that causation was one of the tests in determining the admissibility of a confession following an illegal detention.

Compare *Collins v. Beto,* 348 F. 2d 823, (5th Cir. 1965); *Pennsylvania ex rel Craig v. Maroney,* 348 F. 2d 22 (3rd Cir. 1965), cert. den., 384 U.S. 1019.

A large number of the jurisdictions which interpret *Wong Sun* as not requiring *ipso facto* the exclusion of a confession made following an illegal arrest retain the test of voluntariness as controlling in determining the admissibility of a confession which has been preceded by an illegal arrest.

The following cases are representative of this line of authority:

In the case of *Prescoe v. State,* 231 Md. 486, 191 A. 2d 226 (1963), the defendant, while at his home at 2:30 A.M., was arrested for grand larceny without a warrant. Six hours after his arrest, while at the station house, the defendant made a confession. At his trial the State admitted that the reason a warrant was not obtained for defendant's arrest was that the police did not have sufficient grounds therefor. Thus, the court assumed the arrest to be illegal. However, at the trial the defendant's attorney admitted that the confession was voluntary, but claimed that *Wong Sun* still required its exclusion. The Court found that voluntariness was still the sole test and that defendant was bound by the judicial admission of his attorney.

The rule of *Prescoe v. State, supra,* has been affirmed in *Dailey v. State,* 239 Md. 596, 212 A. 2d 257 (1965), cert. den. 384 U.S. 913; *Mefford v. State,* 235 Md. 497, 201 A. 2d 824 (1964), cert. den. 380 U.S. 937; *Peal v. State,* 232 Md. 329, 193 A. 2d 53 (1963); *Stewart v. State,* 232 Md. 318, 193 A. 2d 40 (1963).

In *People v. Freeland,* 218 Cal. App. 2d 199, 32 Cal. Rptr. 132 (1963), the evidence disclosed that the defendant was arrested without a warrant and charged with burglary. The court found the arrest to be illegal. After several hours of questioning at police headquarters, the defendant confessed. Holding the confession to be admissible into evidence, the court stated:

> "[A]bsence of coercion and inducement continues to be the sole criterion of confession admissibility in California criminal prosecutions; illegal detention is only one of the factors which determine whether the statement is voluntary. (Citations omitted)
>
> .  .  .
>
> "As to the particular kind of evidence at issue, a confession, the ultimate test of admissibility remains that of volition in fact. If the individual's 'will was overborne', if his confession was not 'the product of a rational intellect and his free will,' it is inadmissible because coerced. (citations omitted) If the individual confesses his offense because he wills to confess, his statement is the product of his own choice, not that of the illegal restraint. To borrow a phrase from another area of the law, the choice of the accused becomes an independent, intervening cause of his confession, and his illegal restraint becomes only a collateral circumstance, not a cause."

In *Burke v. United States,* 328 F. 2d 399 (1st Cir. 1964), cert. den. 379 U.S. 849, the defendant Leo Burke was prosecuted for mail

robbery. He was arrested without a warrant or without probable cause. He was taken to the police station but was not immediately questioned because he appeared to have been drinking heavily. About eight hours after his arrest he was questioned by federal postal authorities who had fully advised him of his rights. The District Court found that the conversation and surrender of certain property by the defendant were admissible since it was made "deliberately and voluntarily on the basis of an intervening, independent act of his own free will, and that they were not made under the compulsion of the illegal arrest." The Circuit Court of Appeals, affirming the decision of the District Court, stated: "[N]ot every statement or surrender of property made during an illegal arrest is created inadmissible because of the illegal arrest."

In *United States v. Close,* 349 F. 2d 841 (4th Cir. 1965), cert. den. 382 U.S. 992, the defendant was suspected of bank robbery, but was arrested by the Roanoke police on a vagrancy charge while the investigation was underway on the robbery. The defendant contended that statements made by him to federal officers while in jail on the vagrancy charge were inadmissible. The Court, finding the arrest to be legal, stated:

> "Assuming, *arguendo,* that the initial arrest by the Roanoke police was illegal, we construe *Wong Sun* as holding, in effect, that not all oral statements are the fruit of the 'poisonous tree' simply because they would not have been made but for the illegal actions of the police. We think the Court in *Wong Sun* clearly indicates the view that a statement which is shown to have been freely and voluntarily made without coercion, either physical or psychological, may be thereby purged of any stigma of illegality and the statement is admissible."

Although this statement was dictum, it clearly represents the view of the Fourth Circuit Court of Appeals and the line of authority here being considered.

In the case of *Hollingsworth v. United States,* 321 F. 2d 342 (10th Cir. 1963), defendant was arrested in his room on a vagrancy charge after the police had received a tip that he had committed a burglary. He was thereafter charged with unlawful possession of a firearm. Defendant contended that his statement made to the police was inadmissible because of an asserted illegal arrest. The Tenth Circuit Court of. Appeals, in affirming defendant's conviction and holding the statement to be admissible, stated: "The fact that a confession was obtained from a person during his custody under an unlawful arrest does not ipso facto make it involuntary and in-

admissible, but the fact that a confession was obtained during such custody and the attendant circumstances should be considered in determining whether the confession was voluntary, but the voluntariness still remains as the test of admissibility."

In accord with the view accepting voluntariness as the controlling test are: *Reeves v. Warden,* 346 F. 2d 915 (4th Cir. 1965) (construing Maryland law); *United States v. McGavic,* 337 F. 2d 317 (6th Cir. 1964), cert. den. 380 U.S. 933; *Ralph v. Pepersack,* 335 F. 2d 128 (4th Cir. 1964) (dictum), cert. den. 380 U.S. 925; *United States v. McCarthy,* 249 F. Supp. 199 (E. D. N. Y. 1966); *State v. Kitashiro,* 48 Hawaii, 204, 397 P. 2d 558 (1964); *State v. Portee,* 46 N.J., 239, 216 A. 2d 227 (1966); *State v. Hodgson,* 44 N.J. 151, 207 A. 2d 542 (1965), cert. den. 384 U.S. 1021; *State v. Jackson,* 43 N.J. 148, 203 A. 2d 1 (1964), cert. den. 379 U.S. 982; *State v. Hooper,* 10 Ohio App. 2d 229, 227 N.E. 2d 414 (1966), cert. den. 389 U.S. 928; *Commonwealth v. Bishop,* 425 Pa. 175, 228 A. 2d 661 (1967), cert. den. 389 U.S. 875; *Jarvis v. State,* 429 S.W. 2d 885 (Tex. Crim. 1968); *Pearson v. State,* 414 S.W. 2d 675 (Tex. Crim. 1967); *Lacefield v. State,* 412 S.W. 2d 906 (Tex. Crim. 1967); *State v. Keating,* 61 Wash. 2d 452, 378 P. 2d 703 (1963).

Justice Frankfurter, speaking for the Court in the case of *Culombe v. Connecticut, supra* (367 U.S. 568, 601), stated the elements of a voluntary confession in these words:

"No single litmus-paper test for constitutionally impermissible interrogation has been evolved. . . .

". . . The ultimate test remains that which has been the only clearly established test in Anglo-American courts for 200 years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process."

We do not interpret *Wong Sun* to hold that every confession made subsequent to an illegal arrest is inadmissible since there the court, in approving the confession of the defendant Wong Sun, stated that because "Wong Sun had been released on his own recognizance after a lawful arraignment, and had returned voluntarily several days later to make the statement, we hold that the connection between the arrest and the statement had become so attenuated as to dissipate the taint." Nor is it reasonable that the cathartic effect of

subsequent attenuating circumstances should affect the admissibility of a confession following an illegal arrest any more than a showing that there were no oppressive or traumatic circumstances accompanying the arrest in the first place which would tend to overbear the will of the person making the confession. Rather, it seems that the decision in *Wong Sun v. United States, supra*, rested on the oppressive circumstances surrounding the arrest. This conclusion is substantiated by this language from *Wong Sun, supra*: "The Government argues that Toy's statements to the officers in his bedroom, although closely consequent upon the invasion which we hold unlawful, were nevertheless admissible because they resulted from 'an intervening independent act of a free will.' This contention, however, takes *insufficient account of the circumstances*. Six or seven officers had broken the door and followed on Toy's heels into the bedroom where his wife and child were sleeping. He had been almost immediately handcuffed and arrested. *Under such circumstances* it is unreasonable to infer that Toy's response was sufficiently an act of free will to purge the primary taint of the unlawful invasion." (Emphasis added)

We condemn any illegal act by police officers. However, when viewed in the narrow field of voluntary confession, we fail to see why an illegal arrest — unaccompanied by violent or oppressive circumstances — would be more coercive than a legal arrest.

[4]    Both reason and weight of authority lead us to hold that every statement made by a person in custody as a result of an illegal arrest is not *ipso facto* involuntary and inadmissible, but the facts and circumstances surrounding such arrest and the in-custody statement should be considered in determining whether the statement is voluntary and admissible. Voluntariness remains as the test of admissibility.

[5, 6]    In this jurisdiction, when a purported confession of a defendant is offered into evidence and defendant objects, the trial judge, in the absence of the jury, hears evidence of both the State and the defendant upon the question of the voluntariness of defendant's statements. *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1, cert. den. 386 U.S. 911; *State v. Rogers*, 233 N.C. 390, 64 S.E. 2d 572. The general rule is that after such inquiry, when there is conflicting evidence offered at the voir dire hearing, the trial judge shall make findings of fact to show the bases of his ruling on the admissibility of the evidence offered. *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511; *State v. Conyers*, 267 N.C. 618, 148 S.E. 2d 569.

In the case of *State v. Conyers, supra,* the trial judge held a

voir dire hearing as to the voluntariness of defendant's confession and at the conclusion of the voir dire hearing made the following entry: "Let the records show that the Court finds the statement and admissions to Officer Munn and Officer Watkins were made freely and voluntarily by the defendant without reward or hope of reward, or inducement, or any coercion from said officers." There, the Court, in granting a new trial, stated: "The court did not make findings of fact. The statements in the court's ruling are conclusions."

**[7]** In the case before us, upon objection of defendants to the offer of their respective purported confessions, the Court conducted a voir dire hearing. The evidence of each of the defendants was in sharp conflict with the evidence offered by the State.

At the conclusion of the preliminary hearing the trial judge made the following entry. (R p 45)

> "Let the record show that the motions by the defendants' attorney in regard to all three defendants, the motions are denied. The court finds as a fact that any statement made by either of the three defendants were made freely and voluntarily and understandingly, without promise or hope of reward, without threat, coercion, duress, or any other undue influence, and that the evidence in regard to same is competent in this criminal action. To the foregoing ruling of the court, the defendants in open court except."

We are unable to distinguish instant case from *State v. Conyers, supra.* Thus, we hold that since the court did not make findings of fact, but only entered conclusions, there is error which entitles each of the defendants to a new trial.

**[8, 9]** The only remaining assignment of error warranting discussion involves the refusal of the trial judge to allow the defense counsel to question the police about the identity of their informer. A defendant is not necessarily entitled to elicit the name of an informer from the State's witnesses. *State v. Boles,* 246 N.C. 83, 97 S.E. 2d 476. The Government's privilege against disclosure of an informant's identity is based on the public policy of "the furtherance and protection of the public interest in effective law enforcement." *Roviaro v. United States,* 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623. However, the privilege must give way "[w]here the disclosure of the informer's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused, or is essential to fair determination of a cause. . . ." *Roviaro v. United*

*States, supra.* In the instant case there was no showing that the identity of the informer would be relevant or helpful to defendants' cases.

**[10]** We recognize that defendants are entitled to question the police as to the reliability of the informer when the constitutional validity of the arrest is challenged. *McCray v. Illinois,* 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056; *Beck v. Ohio,* 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223. However, in the cases before us the invalidity of the arrests has been established and new trials granted on other grounds. This contention should not arise at the new trials. This assignment of error is overruled.

Because of error affecting the trial of each of the defendants, the decision of the Court of Appeals is reversed and the cause is remanded to that Court with direction to award a new trial to each of the defendants, to be tried in accordance with the principles herein enunciated.

Error and remanded.