## 53789. NOLTON v. THE STATE.
## 53790. BATTLE v. THE STATE.

DEEN, Presiding Judge.

At 2:13 a.m. on September 8, 1976, a patrol car received a request from an employee of the Holiday Inn in Forsyth, Georgia, to investigate the premises because a car with at least three persons had gone down to the parking lot in back and had not reappeared. On arrival the officer saw two men walking rapidly away, but he did not stop them. He proceeded to the parking lot. A man in the lot, later identified as defendant Nolton, seeing his arrival, turned hastily to go between two buildings and dropped his flashlight. The officer demanded his return and placed him in the police car; at about the same time the officer noticed a Cadillac in the lot with its door partly open and the dome light on. Investigation revealed that the car had an antenna for a CB radio but the radio was missing, and a piece of wire was lying near it on the ground. Looking in an adjacent car the officer found another man (defendant Battle) crouched in the front seat, and a coat hanger beneath him on the floor board. He placed Battle also in the patrol car and called for more men. Police Chief Hesser received the call about 2:30 and arrived on the premises about 3 a.m. Other officers arrived, and another car with door open and CB radio apparently removed was located on the premises. Officers searching the area found a car in the same condition behind the Ramada Inn; its owner was awakened and verified that his CB radio had in fact been stolen during the night. The police chief then took the defendants to police headquarters and informed them of their Miranda rights. Nolton was interrogated at 4:05 a.m. and gave a verbal statement in which he said he had accepted a ride to Forsyth with three other men, that they had been talking about getting some CB radios and that he had nothing to do with it. This was reduced to writing and signed by him at 6:45 a. m. During the same day arrest warrants were taken out for the defendants and a search warrant was issued for the automobile in which Battle was found; the latter yielded four CB radios and coat hangers from the trunk. One of the radios was identified

by the owner of the car which had been rifled at the Ramada Inn; its value was established at over $100. On September 10, defendant Nolton volunteered a further statement, and two confessions were given and signed by him. The defendants were jointly tried and convicted. *Held:*

1. It is contended that the original arrest was without probable cause, that the original incriminating statement was therefore inadmissible in evidence as the product of an illegal arrest, and that the two later statements were so tainted by these facts as to be equally inadmissible. It should first be observed that, where the Miranda warnings are in fact given, it is not every case in which a warrantless arrest on less than probable cause will be held reversible error. The guidelines as set out in Wong Sun v. United States, 371 U. S. 471 (83 SC 407, 9 LE2d 441), stress: p. 487: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which. . . objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " In Brown v. Illinois, 422 U. S. 590, it was pointed out that the Wong Sun opinion had as its primary purpose to protect Fourth Amendment rights, and that protection of the Fifth Amendment right against self-incrimination is also involved. Brown was reversed because the facts did not meet Fifth Amendment standards sufficiently to authorize a finding that the "primary taint" had been sufficiently attenuated, and because the Illinois Supreme Court erroneously held that a mere giving of Miranda warnings, between the time of the illegal arrest and the interrogation, was sufficient in and of itself to do so. The case by case examination of facts to determine whether the confession has been coerced by the *circumstances* of and following the illegal arrest has been followed in many cases, including People v. Fields, 334 NE2d 752, and United States v. Beasley, 412 FSupp. 447, where confessions were held not due to exploitation of the illegal arrest, and State v. Moore, 275 N. C. 141 (166

SE2d 53) where the case was remanded for further hearings. The degree of illegality appearing is also, according to some of the cases, an item to be considered, and we note here that the police officers were scrupulous in early obtention of arrest and search warrants, and in taking in the first instance only a statement which the defendant does not contend was involuntary or coerced (the co-defendant, in fact, refused to discuss the matter) and which he may have thought would inure to his advantage.

2. However, it would appear in any event that under *Sanders v. State,* 235 Ga. 425 (219 SE2d 768) there was probable cause, at least for the detention of the defendants from around 3 a.m. until later in the day when a warrant for their arrest could be obtained. By that time, of course, the search warrant had also issued for the automobile and the radios had been recovered. Analysis of *Sanders* shows that probable cause was essentially predicated on the following: discovery of the crime, footprints inside which were made by shoes *like* those the defendant was wearing, tire tracks in the driveway *like* those of the tires on the car the defendant was driving, and his inability to account otherwise for his whereabouts. Here the following appears: summoning of police because of suspicious activity in a parking lot, one defendant apparently attempting to slip away when he saw the officers, another defendant attempting to avoid detection in the vehicle, parked cars with doors cracked and dome lights on which, on examination, revealed facts suggesting recent theft, and of course the coat hanger in plain view in the defendant's car (which might have been used to force the doors) and the piece of wire on the ground. We hold these facts, taken together, constituted probable cause to believe that the defendants had been interrupted in the midst of illegal activities, and that the police in this case exerted a minimum amount of coercion consistent with the defendants' constitutional rights on the one hand and good investigative procedures on the other. For one thing, the arrest and search warrants were obtained the same day, whereas in *Sanders* three days elapsed between the warrantless arrest and the warrant and hearing. Nor do we find *Raif v. State,* 109 Ga. App. 354 (136 SE2d 169)

applicable, since there the defendants were arrested and searched before the officers had any awareness that a crime might have been committed. The evidence here is sufficient to give probable cause to believe both that a crime was being committed and that the defendants were the perpetrators.

*Judgments affirmed. Webb and Marshall, JJ., concur.*

SUBMITTED APRIL 7, 1977 — DECIDED APRIL 19, 1977.

*Melton & Melton, Stephen A. Melton,* for appellants.
*E. Byron Smith, District Attorney, Hal Craig, Assistant District Attorney,* for appellee.